**VIDEO PIPELINE, INC., Plaintiff,**

v.

**BUENA VISTA HOME ENTERTAINMENT, INC., Defendant.**

**Buena Vista Home Entertainment, Inc., and Miramax Film Corporation, Counterclaim Plaintiffs,**

v.

**Video Pipeline, Counterclaim Defendant.**

**Civil No. 00–5236 (JBS).**

United States District Court, D. New Jersey.

July 26, 2002.

Gary D. Fry, Esquire, Paul R. Fitzmaurice, Esquire, Pelino & Lentz, P.C., Philadelphia, PA, for Plaintiff and Counterclaim Defendant Video Pipeline, Inc.

Gary A. Rosen, Esquire, Patrick M. Madamba, Jr., Esquire, Akin, Gump, Strauss, Hauer & Feld, LLP, Philadelphia, PA, for Defendant/Counterclaim Plaintiff Buena Vista Home Entertainment, Inc., and Counterclaim Plaintiff Miramax Film Corporation.

## *OPINION*

SIMANDLE, District Judge.

This matter comes before the Court upon motion by plaintiff Video Pipeline, Inc. ("Plaintiff" or "Video Pipeline") to dismiss counterclaims asserted by defendant Buena Vista Home Entertainment, Inc. and counterclaim co-plaintiff Miramax Film Corporation (collectively "Defendant" or "BVHE"). Plaintiff Video Pipeline compiles and organizes previews of home video products to home video wholesaler and retailer customers. Defendant BVHE manufactures, distributes, and sells home video versions of copyrighted motion pictures, and is the exclusive licensee of Walt Disney Pictures and Television ("Disney"). Plaintiff Video Pipeline originally brought suit for a declaratory judgment that its use of defendant BVHE's trailers did not constitute copyright infringement. After plaintiff amended its complaint, Defendant BVHE subsequently brought amended

counterclaims asserting copyright infringement, federal unfair competition/false designation of origin, state law unfair competition, breach of contract, unjust enrichment, conversion, and replevin.

In the present motion, plaintiff Video Pipeline seeks dismissal of defendant BVHE's counterclaims asserting violations under the Lanham Act (Count III), state law unfair competition (Count IV), breach of contract (Count V), conversion (count VII), and replevin (Count VIII), for failure to state a claim. Additionally, plaintiff contends that the state law claims of unfair competition, breach of contract, unjust enrichment (Count VI), conversion and replevin are federally preempted by the Federal Copyright Act. Plaintiff also argues that its home video retailer customers are making fair use of the promotional previews and plaintiff's clip previews. For the reasons discussed herein, plaintiff's motion to dismiss will be granted in part and denied in part.

## BACKGROUND

Plaintiff Video Pipeline filed the underlying complaint against defendant BVHE on October 24, 2000, seeking a declaratory judgment that plaintiff's streaming of Promotional Previews provided by defendant BVHE, which Video Pipeline makes available on "Video Pipeline.com" to Internet customers of plaintiff's video retailer clients, does not infringe any copyright or violate any rights of defendant BVHE. (Amended Compl.) Plaintiff Video Pipeline also seeks a declaratory judgment that the similar streaming of previews it subsequently created from copies of certain home videos sold by BVHE to home video distributors and retailers (plaintiff's "clip previews") constitutes fair use and does not violate any of defendant BVHE's rights. (Amended Compl.)

On November 7, 1998, Video Pipeline and BVHE had entered into a Master Clip License Agreement permitting Video Pipeline to exhibit certain videotape previews provided by BVHE. (Agreement, Pl.'s Br. Ex. A.) Plaintiff Video Pipeline began making these Promotional Previews available on the Internet websites of various home video wholesaler and retailer customers. (Def.'s Amended Counterclaims, ¶ 14; Horovitz Aff. ¶¶ 17, 21.)

Subsequent to filing suit, Video Pipeline returned defendant BVHE's promotional materials and began creating previews from copies of movies sold by BVHE to retailer clients (hereinafter "clip previews"), which were streamed and accessed by Internet customers via the website "Video Pipeline.com." (Amended Compl. ¶¶ 41, 43.) On or about May 9, 2001, plaintiff Video Pipeline discontinued streaming the clip previews on the Internet. (Amended Compl. ¶ 45.) Defendant BVHE previously filed a motion for preliminary injunction, seeking to enjoin plaintiff Video Pipeline from streaming the clip previews it created out of motion pictures upon which BVHE owns the copyright. The voluntary stay was effective until March 28, 2002, when this Court granted defendant's preliminary injunction motion. (*Video Pipeline, Inc. v. Buena Vista Home Entm't, Inc.*, 192 F.Supp.2d 321 (D.N.J.2002).)

After plaintiff Video Pipeline was granted leave to amend its complaint on June 11, 2001, and defendant BVHE thereafter filed its amended answer and counterclaims. Plaintiff filed this motion to dismiss the amended counterclaims, asserting that defendant BVHE has failed to state a claim for certain federal and state law claims, and that defendant's state law claims are preempted by the federal Copyright Act.

## DISCUSSION

### I.  Motion to Dismiss Standard

The defendants have moved to dismiss the Second Amended Complaint pursuant to Rule 12(b)(6), Fed.R.Civ.P. A motion to dismiss under Rule 12(b)(6) for failure to state a claim upon which relief can be granted does not attack the merits of the case, but merely tests the legal sufficiency of the Complaint. See Nami v. Fauver, 82 F.3d 63, 65 (3d Cir.1996). When considering a Rule 12(b)(6) motion, the reviewing court must accept as true all well-pleaded allegations in the Complaint and view them in the light most favorable to the plaintiff. See Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir.1994); Palladino ex rel. U.S. v. VNA of Southern New Jersey, Inc., 68 F.Supp.2d 455 (D.N.J.1999). Here, in a motion to dismiss counterclaims, the allegations must be viewed in the light most favorable to defendant, the non-movant.

In considering the motion, a district court must also accept as true any and all reasonable inferences derived from those facts. See Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 (3d Cir.1994); Schrob v. Catterson, 948 F.2d 1402, 1405 (3d Cir.1991). A court may not dismiss the Complaint "unless it appears beyond doubt that the [non-movant] can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Therefore, in deciding a motion to dismiss, a court should look to the face of the complaint and decide whether, taking all of the allegations of fact as true and construing them in a light most favorable to plaintiff as non-movant, the complaint's allegations state valid legal claims. See Markowitz v. Northeast Land Co., 906 F.2d 100, 103 (3d Cir.1990).

### II.  Analysis

Plaintiff Video Pipeline asserts that defendant's amended counterclaims under the Lanham Act, state law unfair competition, breach of contract, conversion, and replevin fail to state a claim for which relief can be granted. In addition, plaintiff contends that the Copyright Act federally preempts defendant's state law claims of unfair competition, breach of contract, unjust enrichment, conversion, and replevin. Plaintiff Video Pipeline also argues that its fair use defense precludes it from liability under the Copyright Act.

### A.  Defendant BVHE's Claim Under the Lanham Act

■ Video Pipeline argues that Count III of BVHE's counterclaim fails to state a claim under the Lanham Act. In Count III of BVHE's amended counterclaims, BVHE contends that Video Pipeline engaged in unfair competition and/or false designation of origin under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). Answer & Amended Counterclaims, ¶¶ 53–62. To prove unfair competition under the Lanham Act, the claimant must prove that (1) he or she owns the mark in question; (2) the mark is valid and legally protectable; and (3) the alleged infringer's use of the mark to identify goods or services is likely to create confusion concerning their origin. See Checkpoint Sys., Inc. v. Check Point Software Techs., Inc., 104 F.Supp.2d 427, 456 (D.N.J.2000) [hereinafter Checkpoint Sys. I ], aff'd, 269 F.3d 270 (3d Cir.2001) [hereinafter Checkpoint Sys. II ].

BVHE has sufficiently alleged in its Amended Counterclaims that The Walt Disney Company together with its subsidiaries and affiliates ("TWDC"), is the owner of the following trademarks: "Walt Disney," "Buena Vista," "Hollywood Pictures," and "Touchstone," and that Miramax is the owner of the "Miramax"

trademark. *See* Answer & Amended Counterclaims, ¶ 54. BVHE, as the exclusive licensee of Walt Disney Pictures and Television in the home video market, *see id.* ¶ 7, also alleges that each of these trademarks is the subject of a trademark registration granted by the United States Patent and Trademark Office. *See id.* If the mark at issue is federally registered and has become incontestible, then validity, legal protectability, and ownership are proved. *Commerce Nat'l Ins. Svcs. v. Commerce Ins. Agency, Inc.*, 214 F.3d 432, 438 (3d Cir.2000) (citing *Ford Motor Co. v. Summit Motor Prods.*, 930 F.2d 277, 292 (3d Cir.), *cert. denied sub nom. Altran Corp. v. Ford Motor Co.*, 502 U.S. 939, 112 S.Ct. 373, 116 L.Ed.2d 324 (1991)). Here, neither Video Pipeline nor BVHE disputes the first two elements. Because TWDC owns the marks at issue, the marks are therefore valid and legally protectable. Accordingly, the first two elements of BVHE's Lanham Act claim have been sufficiently alleged.

Under the third element, to prove likelihood of confusion, a claimant must show that " 'consumers viewing the mark would probably assume the product or service it represents is associated with the source of a different product or service identified by a similar mark.' " *Checkpoint Sys. II*, 269 F.3d at 280 (citing *Scott Paper Co. v. Scott's Liquid Gold, Inc.*, 589 F.2d 1225, 1229 (3d Cir.1978)). The relevant standards regarding likelihood of confusion in noncompeting goods cases, as well as competing goods cases, *see Checkpoint Sys. II*, 269 F.3d at 280 n. 8 ("The multi-factor tests used to determine likelihood of confusion between noncompeting goods should also be applied in cases involving directly competing goods."), are commonly known as the *Lapp* factors:

(1) The degree of similarity between the owner's mark and the alleged infringing mark;

(2) the strength of the owner's mark;

(3) the price of the goods and other factors indicative of the care and attention expected of consumers when making a purchase;

(4) the length of time the defendant has used the mark without evidence of actual confusion;

(5) the intent of the defendant in adopting the mark;

(6) the evidence of actual confusion;

(7) whether the goods, though not competing, re marketed through the same channels of trade and advertised through the same media;

(8) the extent to which the targets of the parties' sales efforts are the same;

(9) the relationship of the goods in the minds of consumers because of the similarity of the functions; and

(10) other facts suggesting that the consuming public might expect the prior owner to manufacture a product in the defendant's market or that he is likely to expand into that market.

*Checkpoint Sys. I*, 104 F.Supp.2d at 456–57 (citing *Fisons Horticulture, Inc. v. Vigoro Indus., Inc.*, 30 F.3d 466, 473 (3d Cir.1994); *Scott Paper Co.*, 589 F.2d at 1231). None of the factors is determinative, and each must be " 'weighed and balanced against the other.' " *Checkpoint Sys. I*, 104 F.Supp.2d at 457 (citing 3 McCarthy on Trademarks and Unfair Competition, § 24:30 (4th ed.1996)).

Here, the Court must determine not whether the defendant has proved likelihood of confusion under the third prong of the Lanham Act, but whether defendant has sufficiently alleged this third element in order to survive a motion to dismiss. Here, referring to Video Pipeline's creation of its clip previews from defendant's

copyrighted movies, defendant BVHE alleges that

> Video Pipeline's use of the Disney/Miramax Marks constitutes use in commerce to sell and/or offer its services and products as described above that is a false designation of origin and description, and is likely to cause confusion and deceive others into believing that BVHE or Miramax, as the case may be, is the source of Video Pipeline's services and products, and that BVHE and Miramax has sponsored, endorsed, approved or otherwise is affiliated with Video Pipeline's services and products.

Answer & Amended Counterclaims, ¶ 56. Additionally, defendant BVHE alleges that each of plaintiff Video Pipeline's clip previews is "preceded by the display of a trademark of Disney or Miramax, creating the false impression that the [clip preview] is in fact an authorized and authentic product." *Id.* ¶ 28. BVHE's contention is that retailer clients who receive Video Pipeline's clip preview service, and Internet customers who view the previews, would believe, falsely, that these clip previews were created and endorsed by BVHE or Miramax. *See also* Answer & Amended Counterclaims, ¶ 56. The inclusion of the trademarks at the beginning of the clip previews supports the notion that the consumers, including video retailer customers, who view the clip previews would believe that the product originated from the entity shown in the trademark, and thus be confused as to the source of that product.

Video Pipeline's main argument is that BVHE fails to allege any mistaken purchasing decisions by consumers and cannot do so because genuine, not counterfeit, home video products are being lawfully sold and rented. Plaintiff's argument relies on the theory that the home video buyer is the "consumer" and the home video is the "product or service," and that

therefore, the consumer is not confused by plaintiff's clip previews, which is nothing more than an advertising aid in the consumer's eventual purchase of the genuine, copyrighted video.

As defendant argues, the Lanham Act, 15 U.S.C. § 1125(a), protects against confusion regarding the origin or sponsorship of a particular product or service, not just that the good or service at issue is what it purports to be:

> Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which ... is likely to cause confusion, or to cause mistake, *or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities* by another person ... shall be liable in a civil action by any person who believes that he or she is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1)(A) (emphasis added). Several cases cited by BVHE provide further support that confusion regarding a product's or service's source satisfies the confusion requirement under the Lanham Act. *See Ryan v. Volpone Stamp Co., Inc.*, 107 F.Supp.2d 369, 380 (S.D.N.Y.2000); *see also Mastercard Int'l Inc. v. Sprint Communications Co. L.P.*, No. 94 CIV. 1051(JSM), 1994 WL 97097, at *4 (S.D.N.Y. Mar. 23, 1994) (unauthorized use of "World Cup" marks conveyed false impression that use was officially sanctioned by World Cup organization and therefore satisfied confusion requirement), *aff'd,* 23 F.3d 397 (2d Cir.1994); *Geisel v. Poynter Prods. Inc.,* 283 F.Supp. 261, 267 (S.D.N.Y.

1968) (" '[A] false representation' ... that a product was authorized or approved by a particular person is actionable under Section 43(a).") (citing *Parkway Baking Co. v. Freihofer Baking Co.,* 255 F.2d 641, 648 (3d Cir.1958)).

The *Ryan* case involved the unauthorized sale of memorabilia with Nolan Ryan's signature. Similar to plaintiff Video Pipeline, the alleged infringer argued that there was no consumer confusion because consumers purchased and received a genuine commemorative item of memorabilia with Nolan Ryan's signature. The court denied the motion to dismiss, holding that plaintiff had stated a viable Lanham Act claim. The court stated that there was a likelihood that consumers would assume that Nolan Ryan had authorized the use of his signature and likeness, and had sponsored, endorsed, or otherwise approved of these products. The fact that the parties had previously entered into a contract, now ineffective, did not make the endorsement "irrevocable for all time." *Ryan,* 107 F.Supp.2d at 380.

While, similar to *Ryan,* it is true in this case that customers purchasing the videos (presumably after viewing Video Pipeline's clip previews) are actually receiving the genuine product of defendants and are further receiving exactly what they expected, plaintiff's use of defendant's trademark in its clip previews implies that defendants BVHE and Miramax sponsor, endorse or authorize such usage in the clip previews. Plaintiff's use of defendant's marks in its clip previews falsely implies that defendant BVHE agreed to the publication or use of the mark in Video Pipeline's product—the clip previews—and this false sponsorship receives protection under the Lanham Act. *See, e.g., Nintendo of America v. Dragon Pac. Int'l,* 40 F.3d 1007 (9th Cir.1994), *cert. denied sub nom. Sheng v. Nintendo of America, Inc.,* 515 U.S. 1107, 115 S.Ct.

2256, 132 L.Ed.2d 263 (1995) (sale of copied Nintendo game cartridges constituted trademark infringement because use of mark falsely implied that copied cartridges were authorized Nintendo products).

It does not appear beyond doubt that BVHE can prove no set of facts in support of its claim which would entitle it to relief. Viewing the allegations in the light most favorable to the non-movant BVHE, and extending to it any reasonable inferences, BVHE has sufficiently alleged that Video Pipeline's use of Disney and Miramax trademarks is likely to cause confusion among video retailers or Internet customers who may believe that Video Pipeline's clip previews originated at the hands of BVHE or its affiliated entities. Thus, defendant satisfies the third requirement for a Lanham Act claim, and plaintiff's motion will be denied on this ground.

1. *First Sale Defense*

Plaintiff Video Pipeline also invokes the first sale defense regarding defendant BVHE's Lanham Act claim. This Court considered the first sale defense in its previous decision granting defendant's motion for preliminary injunction and determined that plaintiff Video Pipeline was not likely to prove it was entitled to the benefits of this doctrine. *See Video Pipeline, supra,* 192 F.Supp.2d at 333–34. That analysis is incorporated here. Codified at 17 U.S.C. § 109(a), the first sale doctrine prevents the copyright owner from controlling future transfers of a particular copy of a copyrighted work after he has transferred its "material ownership" to another. *See id.* at 333 (citing *Columbia Pictures v. Aveco, Inc.,* 800 F.2d 59, 63–64 (3d Cir.1986) (citation omitted)). Because plaintiff Video Pipeline was not a retailer who had lawfully purchased copies of defendant's product, this Court determined that plaintiff could not avail itself of this

doctrine. Similarly, in the context of this motion to dismiss, the first sale defense is inapplicable to plaintiff, a non-retailer which has not purchased lawful copies of the copyrighted works but is alleged to have "pirated ... BVHE's valuable intellectual property...." Answer & Amended Counterclaims, ¶ 72. Accordingly, plaintiff's actions may not be shielded by the first sale defense.

### 2. *Standing*

■ Plaintiff additionally argues that defendants BVHE and Miramax lack standing to bring a claim under § 43(a) of the Lanham Act, 15 U.S.C. § 1125, because they fail to allege the requisite "pecuniary stake" in the goods or services at issue, citing to *Model Imperial Co., Inc. v. Westwind Cosmetics, Inc.*, 808 F.Supp. 943 (E.D.N.Y.1992). Contrary to plaintiff's contention that defendant must allege that it earns money every time the good or service is sold, *see* Pl.'s Reply Br. at 2, the Third Circuit has stated that the standing requirement is met if the party asserting the violation demonstrates "a reasonable basis for the belief that [it] is likely to be damaged as a result of" the Lanham Act violation. *Novartis Consumer Health, Inc. v. Johnson & Johnson–Merck Consumer Pharms.*, 290 F.3d 578, 595 (3d Cir.2002) (citations omitted).

Miramax, as the owner of the trademarks, and BVHE, as the exclusive licensee of the trademarks in Disney's home video market, have sufficiently alleged that they face financial consequences due to plaintiff's use of the trademarks in its clip previews. Defendants plead in their answer and amended counterclaims that "Video Pipeline's Internet websites, services and products compete with the Internet websites operated by BVHE, Miramax, and their affiliates and licensors where authentic trailers for copyrighted motion picture works can be viewed, and where other products are cross-sold and valuable marketing information is collected." Amended Counterclaims, ¶ 15. Defendant BVHE further alleges that "[a]s a direct and proximate result of Video Pipeline's acts of unfair competition, BVHE and Miramax have suffered substantial economic injury, lost profits, damage to their goodwill and reputation, and other damages for which there is no adequate remedy at law." *Id.* ¶ 16.

Financial and non-economic repercussions that BVHE and Miramax allege they would face as the licensee and trademark owner, respectively, from market competition with Video Pipeline are sufficient to establish that they are likely to be damaged as a result of plaintiff's actions. *See also STX, Inc. v. Bauer USA, Inc.*, 1997 WL 337578, 43 U.S.P.Q.2d 1492, 1495 (N.D.Cal.1997) (exclusive licensee has standing to bring action under Lanham Act). Accordingly, defendants BVHE and Miramax have sufficiently demonstrated standing, and plaintiff's motion will also be denied on this ground.

### B. *Defendant's State Law Unfair Competition Claim*

■ Video Pipeline claims that BVHE fails to state a claim for state law unfair competition because "claims under N.J.S.A. 56:4–1 are equivalent to those under the federal Lanham Act pertaining to false designation of origin." Pl.'s Br. at 11. N.J.S.A. 56:4–1 provides that "[n]o merchant, firm or corporation shall appropriate for his or their own use a name, brand, trade-mark, reputation or goodwill of any maker in whose product such merchant, firm or corporation deals." N.J.S.A. 56:4–1. Section 56:4–1 of the N.J.S.A. is the statutory equivalent of section 43(a)(1) of the Lanham Act, and violation of that section leads to a finding of

liability under N.J.S.A. 56:4–1. *See FM 103.1, Inc. v. Universal Broad. of New York, Inc.*, 929 F.Supp. 187, 198 (D.N.J. 1996) (citing *Apollo Distrib. Co. v. Jerry Kurtz Carpet Co.*, 696 F.Supp. 140, 143 (D.N.J.1988); *Nat'l Football League Props., Inc. v. New Jersey Giants, Inc.*, 637 F.Supp. 507, 519 (D.N.J.1986)).

In this case, defendant BVHE has adequately stated a claim for the Lanham Act, as discussed above. Because the state statute on unfair competition is equivalent to the federal Lanham Act, defendant BVHE has also stated a state law claim for unfair competition. Accordingly, plaintiff's motion to dismiss for failure to state a claim will be denied as to defendant's state law unfair competition claim.

## C. *Defendant's Breach of Contract Claim*

■ Plaintiff Video Pipeline asserts that defendant's breach of contract claim fails because "BVHE fails to allege that it performed its own contractual duty of designating the Videos and designating the uses of the preview tapes, as explicitly stated in the Agreement." Pl.'s Br. at 12. A party alleging a breach of contract satisfies its pleading requirement if it alleges (1) a contract; (2) a breach of that contract; (3) damages flowing therefrom; and (4) that the party performed its own contractual duties. *See Pub. Serv. Enter. Group, Inc. v. Phila. Elec. Co.*, 722 F.Supp. 184, 219 (D.N.J.1989) (citing 5 Wright & Miller, Federal Practice & Procedure, § 1235 at 189–90); *see also In re Cendant Corp. Sec. Litig.*, 139 F.Supp.2d 585, 604 n. 10 (D.N.J. 2001) (noting that New Jersey law requires pleading of performance of movant's own contractual duties).

■ Here, defendant BVHE has pled that plaintiff Video Pipeline and defendant BVHE entered into a Master Clip License Agreement on November 7, 1988, which is attached as an exhibit to defendant's answer and amended counterclaims, *see* Answer & Amended Counterclaims, Ex. A, thereby satisfying the first element of its contract claim. Defendant BVHE has also alleged in its counterclaim that Video Pipeline has breached the following terms and conditions of the Master Clip License Agreement:

(a) Video Pipeline has breached its contractual obligation to BVHE to immediately return the Trailers, the tangible property of BVHE, despite BVHE's repeated demands that Video Pipeline do so.

(b) Video Pipeline has breached its contractual obligation to BVHE to not make it appear that BVHE is a sponsor of, consents to, or otherwise endorses Video Pipeline's products and services by displaying on the videopipeline.com and videodetective.com Internet websites the proprietary Disney/Miramax Marks....

(c) Video Pipeline, through its Internet activities, has breached its contractual obligation to BVHE to not expose BVHE to potential litigation by persons who have exclusively licensed intellectual property to BVHE.

Answer & Amended Counterclaims, ¶ 68. Defendant's allegations that Video Pipeline failed to comply with its obligations under the contract satisfies the second element. In addition, defendant has sufficiently alleged damages under the third element because it claims that "[a]s a direct and proximate result of Video Pipeline's breach of the Master Clip License Agreement, BVHE has suffered substantial economic injury, lost profits, and damages in an amount subject to proof at trial." *Id.* ¶ 69.

Under the fourth element, defendant BVHE alleges that "[b]eginning in 1988 and continuing to the middle of 2000, BVHE from time to time provided Trailers

to Video Pipeline pursuant to the terms of the Master Clip License Agreement." Answer & Amended Counterclaims, ¶ 13. This was pursuant to its duty under the agreement, which provides:

BVHE granted Video Pipeline limited permission to use certain three-quarter inch broadcast quality videotapes, which BVHE would designate and provide to it from time-to-time, for use as part of video preview compilations to be exhibited in video stores to promote home video sales and rentals.

Answer & Amended Counterclaims, ¶ 12. Although plaintiff claims that BVHE was supposed to designate the "uses of the preview tapes," the contract only called for defendant BVHE to designate and provide certain videotapes to plaintiff Video Pipeline, which it sufficiently alleged in its answer and amended counterclaims. The fourth element for breach of contract is therefore satisfied.

Plaintiff Video Pipeline further contends that BVHE's designation and provision of materials is a "condition precedent" that was neither fulfilled nor excused by plaintiff for its nonoccurrence. "A condition precedent is a fact or event occurring subsequently to the making of a valid contract which must exist or occur before there is a right to immediate performance, before there is a breach of contract duty or before the usual judicial remedies are available." *Suburban Transfer Svc., Inc. v. Beech Holdings, Inc.,* 716 F.2d 220, 224 n. 7 (3d Cir.1983) (finding that contract established a condition precedent of creation of valid loan) (citations omitted); *see also Watson v. City of Salem,* 934 F.Supp. 643, 660 (D.N.J.1995) (successful completion of background check was condition precedent to creation of enforceable employment contract). According to Rule 9(c), Fed.R.Civ. P., "[i]n pleading the performance or occurrence of conditions precedent, it is suf-

ficient to aver generally that all conditions precedent have been performed or have occurred." Fed.R.Civ.P. 9(c).

The Master Clip License Agreement called for defendant BVHE to provide certain videotapes to plaintiff Video Pipeline. Assuming that the "designation" of materials was a condition precedent to the enforceable contract, defendant has generally averred that it has fulfilled this condition in its answer and counterclaim. *See* Answer & Amended Counterclaims, ¶ 13. Plaintiff's blanket assertion that defendant has failed to satisfy this condition calls for consideration of facts extrinsic to the pleadings and therefore beyond the scope of this Rule 12(b)(6) motion.

Accordingly, plaintiff Video Pipeline's motion to dismiss for failure to state a claim will be denied as to defendant BVHE's state law breach of contract claim.

### D. *Defendant's State Law Conversion Claim*

■ Plaintiff Video Pipeline alleges that defendant BVHE's conversion claim fails on the theory that it is based on an invalid breach of contract claim, which is considered and rejected above. Conversion is "an unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another, to the alteration of their condition or the exclusion of an owner's rights." *Barco Auto Leasing Corp. v. Holt,* 228 N.J.Super. 77, 83, 548 A.2d 1161 (App.Div.1988) (citations omitted).

In this case, defendant BVHE has pled that

Video Pipeline without authority or valid justification, converted BVHE's and Miramax's Trailers for its own benefit and use, and has wrongfully exerted, and continues to wrongfully exert, physical possession, dominion, custody and

control over tangible property belonging to BVHE and Miramax. Answer & Amended Counterclaims, ¶ 76. BVHE's allegation that Video Pipeline assumed and exercised control and custody over physical copies of their trailers and converted them for its own benefit adequately states a claim for conversion. Accordingly, plaintiff Video Pipeline's motion to dismiss will be denied on this ground.

### E. Defendant's State Law Replevin Claim

■ Plaintiff Video Pipeline similarly claims that BVHE has failed to state a claim for replevin because it is based on an invalid breach of contract claim, which is considered above and rejected. Under N.J.S.A. 2B:50-1, "[a] person seeking recovery of goods wrongly held by another may bring an action for replevin . . . If the person establishes the cause of action, the court shall enter an order granting possession." N.J.S.A. 2B:50-1.

Here, defendant BVHE has alleged that "BVHE and Miramax have an immediate right of possession to the original Trailers, their tangible property, previously provided to Video Pipeline, which Video Pipeline continues to wrongly hold." Answer & Amended Counterclaims, ¶ 81. Defendant BVHE sufficiently alleges that it seeks to recover goods wrongly held by plaintiff Video Pipeline, as provided by state statute. Accordingly, plaintiff's motion to dismiss based on failure to state a claim will be denied on this ground.

### F. Federal Preemption of State Law Claims

Plaintiff Video Pipeline additionally asserts that the federal Copyright Act preempts defendant BVHE's state law counterclaims. Under the Copyright Act, 17 U.S.C. § 301,[1] a state common law or statutory claim is preempted if: (1) the particular work to which the state law claim is being applied falls within the type of works protected by the Copyright Act under Sections 102 and 103; and (2) the state law seeks to vindicate "legal or equitable rights that are equivalent" to one of the bundle of exclusive rights already protected by copyright law under 17 U.S.C. § 106. *See Nat'l Basketball Ass'n v. Motorola, Inc.,* 105 F.3d 841, 848 (2d Cir. 1997); *see also Wrench LLC v. Taco Bell Corp.,* 256 F.3d 446, 453 (6th Cir.2001), *cert. denied,* —— U.S. ——, 122 S.Ct. 921, 151 L.Ed.2d 885 (2002); *Alcatel USA, Inc. v. DGI Techs., Inc.,* 166 F.3d 772, 785–86, *reh'g en banc denied,* 180 F.3d 267 (5th Cir.1999). Thus, the preemption analysis encompasses both a "subject matter requirement," and a "general scope" or

---

1. The preemption section of the Copyright Act provides, in relevant part:

   (a) On and after January 1, 1978, all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright as specified by sections 102 and 103, whether created before or after that date and whether published or unpublished, are governed exclusively by this title. Thereafter, no person is entitled to any such right or equivalent right in any such work under the common law or statutes of any State.

   (b) Nothing in this title annuls or limits any rights or remedies under the common law or statutes of any States with respect to—
   (1) subject matter that does not come within the subject matter of copyright as specified by sections 102 and 103, including works of authorship not fixed in any tangible medium of expression; or

   .  .  .  .  .

   (3) activities violating legal or equitable rights that are not equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 . . .
   17 U.S.C. § 301(b)(1) & (3).

"equivalency" requirement, respectively. *See Sturdza v. United Arab Emirates,* 281 F.3d 1287, 1304 (D.C.Cir.2002) (citing *Wrench,* 256 F.3d at 453); *see also Nat'l Basketball Ass'n,* 105 F.3d at 848.

The subject matter of copyright consists of "original works of authorship fixed in any tangible medium of expression," including motion pictures and other audiovisual works. 17 U.S.C. § 102(a) & (a)(6). Under this first inquiry, defendant BVHE is the exclusive licensee of Walt Disney Pictures and Television in the home video market, *see* Answer & Amended Counterclaims, ¶ 7, and all of the Disney/Miramax motion picture works are each the subject of a valid copyright registration issued by the United States Copyright Office. *See id.* ¶ 35. The copyrighted motion pictures are the sources for both the Promotional Previews provided by BVHE and the clip previews that were subsequently created by Video Pipeline that are at issue in this case. As such, and here where neither party contests the applicability of the first prong, the works thus fall within the subject matter of copyright.

■ The issue here is whether the state laws asserted by defendant BVHE in its counterclaims create rights which are "equivalent to" any of the exclusive rights granted to the copyright holder under § 106. If so, they are preempted. The inquiry performed under the second prong of the § 301 preemption analysis is as follows:

[A] right which is "equivalent to copyright" is one which is infringed by the mere act of reproduction, performance, distribution or display.... If, under state law, the act of reproduction, performance, distribution or display ... will in itself infringe the state created right, then such right is preempted. But if other elements are required, in addition to or instead of, the acts of reproduction,

performance, distribution or display, in order to constitute a state created cause of action, then the right does not lie "within the general scope of copyright," · and there is no preemption.

*SBK Catalogue P'ship v. Orion Pictures Corp.,* 723 F.Supp. 1053, 1066 (D.N.J.1989) (citing 1 Nimmer, The Law of Copyright § 1.01[B][1], at 1–12–13 (1984)). In other words, the federal Copyright Act does not preempt a claim where

[a]n extra element is required instead of or in addition to the acts of reproduction, performance, distribution or display, in order to constitute a state-created cause of action ... A state law claim is not preempted if the extra element changes the nature of the action so that it is qualitatively different from a copyright infringement claim.

*Expediters Int'l of Washington, Inc. v. Direct Line Cargo Mgmt. Svcs., Inc.,* 995 F.Supp. 468, 479–80 (D.N.J.1998) (quoting *Ez–Tixz, Inc. v. Hit–Tix, Inc.,* 919 F.Supp. 728, 737 (S.D.N.Y.1996) (citation omitted)). For the following reasons, this Court finds that defendant's counterclaim for unjust enrichment is preempted, but that its counterclaims for unfair competition, breach of contract, conversion, and replevin are not preempted.

### 1. *Unfair Competition Claim*

■ Plaintiff contends that defendant BVHE's state law unfair competition claim is preempted because it is based on misappropriation, citing to *Financial Info., Inc. v. Moody's Investors Svc., Inc.,* 808 F.2d 204, 208 (2d Cir.1986) (affirming dismissal of claim under misappropriation and copying branches of New York state unfair competition laws as federally preempted), *cert. denied,* 484 U.S. 820, 108 S.Ct. 79, 98 L.Ed.2d 42 (1987). Plaintiff alleges that "[a]ll of defendant's state law claims are based upon the premise that the Pro-

motional. Previews furnished to Video Pipeline belong to Defendant and were misappropriated by Video Pipeline." Pl.'s Br. at 16. Misappropriation, or "reverse passing off," is grounded in the alleged unauthorized copying and use of another's copyrighted expression, and thus fails the extra element. test. *See Fundamental Too, Ltd. v. Universal Music Group, Inc.,* No. Civ. A. 97–1595, 1997 WL 381608, at *4 (E.D.Pa. July 9, 1997); *see also Kregos v. Associated Press,* 3 F.3d 656, 666 (2d Cir.1993) (holding misappropriation claim "grounded solely in the copying of a plaintiff's protected expression" was preempted by § 301 of Copyright Act), *cert. denied,* 510 U.S. 1112, 114 S.Ct. 1056, 127 L.Ed.2d 376 (1994). And, as the Second Circuit in *Moody's Investors* determined, " '[S]tate law claims that rely on the misappropriation branch of unfair competition are preempted.' " *Moody's Investors,* 808 F.2d at 208 (quoting *Warner Bros., Inc. v. American Broad. Cos., Inc.,* 720 F.2d 231, 247 (2d Cir.1983)). In other words, reverse passing off occurs when one markets, sells, and represents the goods or services of another as its very own, and thus gives rise to an actionable claim for reproducing, distributing, or displaying copyrighted works.

Contrary to plaintiff's argument, defendant asserts a "passing-off" claim under New Jersey state unfair competition law, which is a claim distinctly different from that of misappropriation. In this case, defendant's unfair competition claim alleges that plaintiff engaged in "unlawful 'passing-off'—the practice of selling goods or services using a mark that is likely to cause confusion as to source, sponsorship or approval of those goods or services— under N.J.S.A. 56:4–1." Answer & Amended Counterclaims, ¶ 64. Defendant essentially maintains that plaintiff "passed off" its clip previews, which contain defendant's trademarks, as having been created

and produced by defendant. Passing off occurs when "[o]ne fraudulently markets his goods as those of another if, though making no misrepresentation himself, he intentionally induces his purchasers so to market them." *SK & F, Co. v. Premo Pharm. Labs., Inc.,* 625 F.2d 1055, 1062 (3d Cir.1980); *see also Web Printing Controls Co. v. Oxy–Dry Corp.,* 906 F.2d 1202, 1203 n. 1 (7th Cir.1990) ("Passing off involves the selling of a good or service of one's own creation under the name or mark of another."). "In reverse passing off, the wrongdoer sells plaintiff's products as its own. It contrasts with passing off, where the wrongdoer sells its products as the plaintiff's." *Fun–Damental, Ltd. v. Gemmy Indus. Corp.,* 41 U.S.P.Q.2d 1427, 1430 (S.D.N.Y.1996) (citation omitted). Plaintiff's argument that claims for misappropriation are generally preempted by federal copyright law is thus not relevant here where BVHE brings a "passing off" unfair competition claim.

Unfair competition claims involving "passing off" are generally not preempted by federal copyright law. *See Wilson v. Mr. Tee's,* 855 F.Supp. 679, 684 (D.N.J. 1994) (passing off claim not preempted by federal copyright law); *see also Warner Bros., supra,* 720 F.2d at 247 (state law claim of unfair competition alleging passing off is "not asserting rights equivalent to those protected by copyright and therefore do not encounter preemption"); *Fun– Damental, Ltd.,* 41 U.S.P.Q.2d at 1430 (passing off claim not preempted by Copyright Act) (citing cases). As defendant BVHE correctly contends, passing off claims are not preempted primarily because such claims include the extra element of deception or misrepresentation which is not an element of a copyright claim. *See Fundamental Too, Ltd., supra,* 1997 WL 381608, at *4 (passing off claim is not preempted "because such a claim alleg-

es an extra element of deception or misrepresentation that is not necessary for a cause of action for copyright"); *Orth–O–Vision v. Home Box Office,* 474 F.Supp. 672, 684 n. 12 (S.D.N.Y.1979) ("Because the element of deception inherent in 'palming off' is not an element of copyright infringement claim, the 'passing off' cause of action is not preempted by federal law.").

Accordingly, defendant BVHE's counterclaim specifically asserting that plaintiff engaged in "passing off" under state law unfair competition can be construed to encompass the allegation that Video Pipeline is distributing its own products, here clip previews, and representing to the public that they are those of defendant BVHE. This necessarily involves the extra element of misrepresentation or deception which is not an element for copyright infringement. As such, the "passing off" claim is an actionable claim not preempted by the federal Copyright Act. Plaintiff Video Pipeline's motion to dismiss will be denied on this ground.

### 2. *Breach of Contract Claim*

■ Plaintiff Video Pipeline asserts that defendant's breach of contract claim is preempted because it is based on a claim for misappropriation. Protection from breach of contract is not equivalent to copyright protection, since "a breach of contract claim requires an 'extra element' that renders the claim qualitatively different from a claim for copyright infringement: a promise by the defendant." *Expediters Int'l of Washington,* 995 F.Supp. at 483 (quoting *Architectronics, Inc. v. Control Sys., Inc.,* 935 F.Supp. 425, 439 (S.D.N.Y.1996)). *But see Wrench, supra,* 256 F.3d at 457 ("If the promise amounts only to a promise to refrain from reproducing, performing, distributing or displaying the work, then the contract claim is preempted."). The district court in *Architectronics* relied on the reasoning of Judge Easterbrook in the Seventh Circuit, who explained the distinction between rights under copyright law and rights created by contract:

> Rights "equivalent to any of the exclusive rights within the general scope of copyright" are rights established by law—rights that restrict the options of person who are strangers to the author. Copyright law forbids duplication, public performance, and so on, unless the person wishing to copy or perform the work gets permission; silence means a ban on copying. A copyright is a right against the world. Contracts, by contrast, generally affect only their parties; strangers may do as they please, so contracts do not create "exclusive rights."

*Architectronics,* 935 F.Supp. at 439 (quoting *ProCD, Inc. v. Zeidenberg,* 86 F.3d 1447, 1454 (7th Cir.1996)). Other circuit courts have additionally held that breach of contract claims are not preempted by the copyright laws. *See, e.g., Lipscher v. LRP Publ'ns, Inc.,* 266 F.3d 1305, 1318–19 (11th Cir.2001) (concluding that breach of contract claim was not preempted because "[t]he rights sought to be enforced in [the] breach of contract claim are not equivalent to the exclusive rights of § 106 . . . ."); *Nat'l Car Rental Sys., Inc. v. Computer Assocs. Int'l, Inc.,* 991 F.2d 426, 431–32 (8th Cir.), *cert. denied,* 510 U.S. 861, 114 S.Ct. 176, 126 L.Ed.2d 136 (1993) (concluding that "the contractual restriction on use of the programs constitutes an additional element making this cause of action not equivalent to a copyright action"); *Taquino v. Teledyne Monarch Rubber,* 893 F.2d 1488, (5th Cir.1990) ("This action for breach of contract involves an element in addition to mere reproduction, distribution or display: the contract promise made by Taquino, therefore, it is not preempted".); *cf. Acorn Structures, Inc. v. Swantz,* 846

F.2d 923, 926 (4th Cir.1988) (reversing finding of preemption because breach of contract claim was not within subject matter of copyright but arose out of implicit contractual provisions of agreement).

In this case, defendant's breach of contract claim asserts that Video Pipeline has breached its contractual obligation under the Master Clip License Agreement: by failing to return the Promotional Previews to defendant BVHE, by displaying the proprietary trademarks of defendant BVHE on its "videopipeline.com" and "videodetective.com" Internet websites, and by linking third party websites to its own in distributing its clip previews. *See* Answer & Amended Counterclaims, ¶¶ 66–69. These alleged promises under the Master Clip License Agreement amount to more than promises to refrain from reproducing, performing, distributing or displaying the works at issue, *see Wrench*, 256 F.3d at 457, which would render them under the purview of copyright law, as they in part obligate plaintiff to return tangible property of BVHE. This right is separate and distinct from defendant BVHE's exclusive rights granted to it under § 106 of the Copyright Act.

Accordingly, because defendant BVHE's breach of contract claim involves an extra element in addition to prohibiting the acts of reproduction, performance, distribution, and display, it is not preempted by federal copyright law. Plaintiff Video Pipeline's motion to dismiss will be denied on this ground.

### 3. *Unjust Enrichment Claim*

Defendant BVHE argues that its unjust enrichment claim is not federally preempted because such claim requires "extra elements" that renders it qualitatively different from a claim for copyright infringement. Legal precedent does not support BVHE on this counterclaim.

"Courts have generally concluded that the theory of unjust enrichment protects rights that are essentially 'equivalent' to rights protected by the Copyright Act; thus, unjust enrichment claims relating to the use of copyrighted material are generally preempted." *Weber v. Geffen Records, Inc.*, 63 F.Supp.2d 458, 462 (S.D.N.Y. 1999) (quoting *Netzer v. Continuity Graphic Assocs., Inc.*, 963 F.Supp. 1308, 1322 (S.D.N.Y.1997)); *Lennon v. Seaman*, 63 F.Supp.2d 428, 436 (S.D.N.Y.1999); *Alvarez Guedes v. Marcano Martinez*, 131 F.Supp.2d 272, 280 (D.P.R.2001). *But see Weigel Broad. Co. v. Topel*, No. 83 C 7921, 1985 WL 2360, at *5 (N.D.Ill. Aug. 21, 1985) (finding no preemption because an action for unjust enrichment, which is equitable in nature, "is not the equivalent of the exclusive rights protected by the Copyright Act").

The foundation of defendant's claim is that plaintiff has exploited BVHE's intellectual property without compensating BVHE for the benefits derived from such use. *See* Answer & Amended Counterclaims, ¶¶ 71–73. Here, BVHE alleges that "BVHE voluntarily conferred upon Video Pipeline the benefits flowing from use of BVHE's valuable intellectual property," *id.* ¶ 71, and that plaintiff Video Pipeline "would be unjustly enriched if it were permitted to retain the benefits it has reaped from the unauthorized use of BVHE's intellectual property...." *Id.* ¶ 73. Although defendant BVHE refers to the terms of the Master Clip License Agreement, *see id.* ¶ 71, its claim that plaintiff Video Pipeline is "exploiting" defendant BVHE's works necessarily involves plaintiff's acts in reproducing, distributing and displaying defendant's works, all of which are encompassed in rights protected under copyright law. *See, e.g., Archie Comic Publ'ns, Inc. v. DeCarlo*, 141 F.Supp.2d 428, 432 (S.D.N.Y.2001)

(finding preemption of unjust enrichment claim because claim was for "exploiting rights that allegedly belonged to DeCarlo by virtue of ownership—in other words, . . . infringing rights that are those of a copyright holder"); *Sys. XIX, Inc. v. Parker,* 30 F.Supp.2d 1225, 1231 (N.D.Cal. 1998) (finding preemption of unjust enrichment claim because "the rights sought to be vindicated . . . are rights involving reproduction and distribution that are clearly equivalent to the rights prescribed by § 106(1) and 106(3)"); *Curtin v. Star Editorial Inc.,* 2 F.Supp.2d 670, 675 (E.D.Pa. 1998) (finding preemption of unjust enrichment because "plaintiff asserts an exclusive right to and reimbursement for the use of his compilation of photographs"). Defendant BVHE's failure to assert an "extra element" also does little to distinguish its unjust enrichment claim from a claim seeking compensation for copyright infringement in this regard.

Contrary to defendant's argument, *Katz Dochrermann & Epstein, Inc. v. Home Box Office,* No. 97 Civ. 7763(TPG), 1999 WL 179603 (S.D.N.Y. Mar. 31, 1999), supports federal preemption of this type of unjust enrichment claim. In *Katz,* the district court allowed the unjust enrichment claim to remain in the case as "an alternative claim asserted in equity" for breach of implied-in-fact contract, but dismissed the claim as an alternative ground for recovery as to the copyright infringement claim. *Id.* at *5. Here, the Court notes the limited viability of an unjust enrichment claim, by nature a quasi-contractual action, which is brought in the face of an express contract, alleged by BVHE in this case. *See Suburban Transfer Svc., supra,* 716 F.2d at 226–27 ("Quasi-contract liability will not be imposed . . . if an express contract exists concerning the identical subject matter"). In this case, where a claim for breach of implied contract is absent, defendant BVHE's claim for unjust enrichment is, as

the district court in *Katz* determined, duplicative of the relief sought under copyright law.

Because the rights asserted under the unjust enrichment claim in the circumstances of this case generally are equivalent to those protected by federal copyright law, and because defendant BVHE fails to assert an extra element that would render its claim qualitatively distinct from a claim seeking compensation for copyright infringement, defendant's unjust enrichment claim is preempted under federal copyright law. Plaintiff Video Pipeline's motion to dismiss will be granted on this ground, and defendant BVHE's unjust enrichment claim will be dismissed.

### 4. *Conversion and Replevin Claims*

▉▉▉▉▉ Defendant BVHE asserts that its conversion and replevin claims are not preempted because these claims involve rights to tangible property not equivalent to the exclusive rights protected by copyright law. "The torts of conversion and trespass relate to interference with tangible rather than intangible property, and hence should be held immune from preemption." 1 Nimmer on Copyright ¶ 1.01[B][1][i], at 1–41 (2001); *see also Lennon, supra,* 63 F.Supp.2d at 436 (finding that state law claims for recovery of chattels and trespass were not preempted "to the extent these claims relate to the tangible items at issue, and not the copyright in those items"); *Ronald Litoff, Ltd. v. American Express Co.,* 621 F.Supp. 981, 986 (S.D.N.Y.1985) (finding no preemption in so far as plaintiffs "allege a tort involving personal, tangible property").

Here, as discussed above, defendant BVHE's conversion claim seeks return of "its tangible property and that of Miramax, *i.e.,* each of the original Trailers BVHE provided to Video Pipeline." An-

swer & Amended Counterclaims, ¶ 77. Defendant's replevin claim alleges that "BVHE and Miramax have an immediate right of possession to the original Trailers, their tangible property, previously provided to Video Pipeline, which Video Pipeline continues to wrongly hold." *Id.* ¶ 82. Defendant BVHE's claim thus involves tangible, physical property, the rights to which are distinctly different from those rights involved in defendant's copyright counterclaims. To the extent that BVHE seeks the return of such items and alleges that plaintiff continues to wrongly hold such items, the rights it asserts under its state law conversion and replevin claims are not equivalent to those protected by the federal copyright laws, which govern the reproduction, performance, distribution, and display of copyrighted works. Accordingly, defendant's state law conversion and replevin claims are not preempted, and plaintiff Video Pipeline's motion to dismiss will be denied on this ground.

## G. *Fair Use Doctrine*

Video Pipeline argues that the home video retailers are making fair use of the promotional previews and its own clip previews "to provide consumer information and marketing at the point-of-sale of those home videos." Pl.'s Br. at 8. This Court, in its previous opinion of March 28, 2002, considered and rejected plaintiff's fair use defense regarding the use of its clip previews in evaluating the likelihood of success of defendant's copyright infringement claim in the context of a preliminary injunction motion. *See Video Pipeline,* 192 F.Supp.2d at 335–43. "The fair use defense confers a privilege on people other than the copyright owner, 'to use the copyrighted material in a reasonable manner, without his consent, notwithstanding the monopoly granted to the owner.'" *Id.* at 335 (citing *Marcus v. Rowley,* 695 F.2d 1171, 1174 (9th Cir.1983) (internal citation

omitted)). In determining whether Video Pipeline was entitled to the fair use defense in the use of its clip previews, the Court previously considered the factors of: the purpose and character of use, the nature of the copyrighted work, the amount and substantiality of the portion used, and the effect of the use upon the potential market for the copyrighted work. *See Video Pipeline,* 192 F.Supp.2d at 335–43 (citing 17 U.S.C. § 107; *Campbell v. Acuff–Rose Music, Inc.,* 510 U.S. 569, 577, 114 S.Ct. 1164, 127 L.Ed.2d 500 (1994)). This Court then held that the aggregate of these factors, including the lack of transformative character of the clip previews and its for-profit use, the fictional nature of the copyrighted works, and the expressive value of the previews in providing a description of the copyrighted motion pictures, weighed against the applicability of the fair use defense to plaintiff Video Pipeline. *See Video Pipeline,* 192 F.Supp.2d at 343. There is nothing raised in the context of this motion to dismiss that would warrant a different result.

Furthermore, to the extent that plaintiff Video Pipeline raises the fair use doctrine regarding its use of the Promotional Previews provided by defendant, the applicability of the fair use defense in the context of a motion to dismiss is questionable. Fair use is an affirmative defense to a copyright infringement claim, and the proponent carries the burden of proof in demonstrating fair use. *See Campbell,* 510 U.S. at 590, 114 S.Ct. 1164 (citing *Harper & Row Publishers, Inc. v. Nation Enters.,* 471 U.S. 539, 561, 105 S.Ct. 2218, 85 L.Ed.2d 588 (1985)). The fair use defense was previously raised, considered, and rejected in the context of defendant BVHE's preliminary injunction motion as to plaintiff's clip previews, in which the Court evaluated the likelihood of success of defendant's copyright infringement counter-

claim on the merits. Here, plaintiff Video Pipeline raises the defense in the context of a motion to dismiss defendant's federal and state law counterclaims under Rule 12(b)(6). As noted above, a motion to dismiss does not attack the merits of the claims, but merely tests the legal sufficiency of the claims. *See Nami v. Fauver, supra,* 82 F.3d at 65. Because the Court's obligation is to ascertain the sufficiency of the pleadings by viewing the well-pleaded allegations in the light most favorable to the non-movant at this stage of the proceedings, the affirmative defense of fair use to evaluate the merits of defendant's copyright infringement counterclaim as to plaintiff's use of BVHE's Promotional Previews will not be considered at this time. Accordingly, Video Pipeline's motion to dismiss will be denied on this ground.

## CONCLUSION

For the reasons discussed above, plaintiff Video Pipeline's motion to dismiss defendant BVHE's amended counterclaims will be granted in part and denied in part. Defendant BVHE has sufficiently pled claims under the Lanham Act and for state law unfair competition, breach of contract, replevin, and conversion. Furthermore, these claims are not federally preempted by the Copyright Act and will therefore proceed. Defendant BVHE's state law unjust enrichment claim is preempted by the Copyright Act, and will be dismissed. The accompanying Order will be entered.

## ORDER

THIS MATTER having come before the Court upon motion by plaintiff Video Pipeline to dismiss defendant Buena Vista Home Entertainment's amended counterclaims for failure to state a claim upon which relief may be granted; and the Court having considered the parties' submissions; and for the reasons stated in the Opinion of today's date; and for good cause shown;

IT IS on this ___ day of July, 2002, hereby

ORDERED that plaintiff's motion to dismiss defendant's amended counterclaims be, and hereby is, **GRANTED in part** as to defendant's unjust enrichment counterclaim, which will be **DISMISSED**; and **DENIED in part** as to all remaining counterclaims.