Jay GREEN, Sr. and Mary Green, Appellants–Defendants and Counter Claimants,

v.

HENDRICKSON PUBLISHERS, INC., Appellee–Plaintiff and Counter Defendant.

No. 79A02–0009–CV–603.

Court of Appeals of Indiana.

July 20, 2001.

Thomas J. Herr, Truitt & Herr, Lafayette, IN, Attorney for Appellants.

Robert B. Carpenter, Schnader Harrison Goldstein & Manello, Boston, MA, Karen S. Horseman, Jonathan D. Mattingly, Barnes & Thornburg, Indianapolis, IN, Attorneys for Appellee.

## OPINION

DARDEN, Judge.

### STATEMENT OF THE CASE

Jay Green, Sr. and Mary Green (collectively the "Greens") bring this interlocutory appeal from the trial court's entry of a judgment dismissing portions of their counterclaim in an action initiated by Hendrickson Publishers, Inc.[1]

We reverse.

### ISSUE

Whether the trial court erred by dismissing portions of the Greens' counterclaim because the claims require reference to copyright law and are preempted.

### FACTS

In January 1985, the Greens entered into an agreement with Hendrickson whereby Hendrickson would publish various materials the Greens purportedly copyrighted. The agreement was for a 10 year period. In January 1995, the Greens and Hendrickson entered into a written agreement outlining the Greens' and Hendrickson's reciprocal duties and responsibilities accompanying termination of the 1985 agreement.

In 1999, Hendrickson initiated a lawsuit in Indiana state court against Jay Green, Sr. d/b/a Sovereign Grace Publishers for the failure to pay for books purchased from Hendrickson pursuant to the termination agreement. The Greens filed a counterclaim alleging, inter alia, copyright infringement by Hendrickson. Based upon the exclusive federal jurisdiction over copyright claims, the Greens removed the action to federal court. Federal court re-manded the action back to state court because a defendant cannot create removal jurisdiction through counterclaim allegations; instead, the basis for removal must appear on the face of the complaint.

Then in state court, the Greens filed an amended counterclaim specifically alleging in paragraph three the following:

3. Hendrickson Publishers, Inc. violated the terms of the parties' agreement:

A. By failing to give notice to Green when a book was out of print.

B. By failing to timely provide updated reports on the status of books in stock.

C. By failing to timely pay royalties due pursuant to the parties' agreement. In particular, a royalty payment due November 30, 1995 was not paid until January of 1996.

D. By continuing to print additional copies of the books covered by the 1985 agreement.

(R. 13).

Hendrickson filed a motion for partial summary judgment, asserting that the Greens' amended counterclaim was based upon the federally preempted copyright claims and was merely couched as claims for breach of contract. The Greens responded that a summary judgment motion is not the appropriate vehicle to raise a court's subject matter jurisdiction; instead, a motion to dismiss is appropriate. Also, the Greens contended, inter alia, their claim should not be dismissed on the basis of preemption because they stated a valid claim under their theory of breach of contract.

Hendrickson agreed that a motion to dismiss would have been the more appropriate vehicle to raise subject-matter juris-

---

1. We held oral argument on March 6, 2001, in Indianapolis, Indiana. We would like to thank the parties for their presentations.

diction, but it urged that the trial court may properly treat the summary judgment motion as a motion to dismiss pursuant to Ind. Trial Rule 12.

After a hearing, the court granted Hendrickson's motion to dismiss portions of the Greens' counterclaim. In pertinent part, the court stated:

> The Court finds that paragraph 3(d) is a claim for copyright infringement and is outside the subject matter jurisdiction of this court and is dismissed without prejudice; and paragraph 3(c) is limited to claims for royalties for books printed under original and termination agreement.

(R. 225). Subsequently, the trial court certified its order at the Greens' request for the purpose of an interlocutory appeal.

### DECISION

In pertinent part, the Copyright Act provides:

> (a) On and after January 1, 1978, all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright as specified in sections 102 and 103, whether created before or after that date and whether published or unpublished, are governed exclusively by this title. Thereafter, no person is entitled to any such right or equivalent right in any such work under the common law or statutes of any State.
> (b) Nothing in this title annuls or limits any rights to remedies under the common law or statutes of any State with respect to—

* * * * *

> (3) activities violating legal or equitable rights that are not equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106.

17 U.S.C. § 301.

■ The parties do not dispute that copyright questions lie within the exclusive jurisdiction of federal courts. Federal courts have exclusive jurisdiction "of any civil action arising under any Act of Congress relating to ... copyrights...." 28 U.S.C. § 1331. However, the Greens contend that the portions of their counterclaim dismissed by the trial court are directed to provisions of the parties' agreements and may be resolved by state contract law. The Greens contend that they seek only to vindicate the contract rights they hold under their original and termination agreements with Hendrickson as to the printing of additional copies of the works subject to the agreements. Implicit in the Greens' argument is the contention that any copyright concerns raised by their counterclaim provisions are merely tangential to the contract claims raised by both parties.

Hendrickson countered that the counterclaim will turn upon determinations of whether the Greens held valid copyrights to the works, and whether the materials printed by Hendrickson violated any copyrights.[2] Hendrickson contends that the counterclaim provisions will necessarily require a determination of preempted copyright issues.

To resolve the narrow issue as to whether the trial court had subject-matter jurisdiction over the entire counterclaim we will

---

**2.** The parties' discussions at the hearing and an exhibit that lists the Greens' works indicate that the Greens used previously published works to index definitions of words found in other works, such as the Bible, already in the public domain. In other words, it appears that the Greens used the work of others to index works in the public domain.

examine the main tenets of preemption law in the context of copyright matters.[3] In determining whether the portions of the Greens' counterclaim that were dismissed lie exclusively within federal jurisdiction, three preemption considerations figure prominently in our discussion: 1) the well-pleaded complaint doctrine and its corollary, the doctrine of complete preemption; 2) the peripheral or tangential nature of the federal component to the predominant state law matter; and 3) the two-tiered "subject matter" and "equivalent" inquiries in copyright matters. Another factor for our consideration is the impact of state and federal trial rules regarding compulsory counterclaims.

 To determine whether a claim "arises under," see 28 U.S.C. § 1331, copyright laws within the exclusive jurisdiction of federal courts, the well-pleaded complaint doctrine is employed. See Durgom v. Janowiak, 74 Cal.App.4th 178, 182, 87 Cal.Rptr.2d 619, 623 (1999). The well-pleaded complaint doctrine generally applies to removal of an action from state court to federal court when the federal court should have had original jurisdiction over the action. "Even if the factual predicate underlying a plaintiff's complaint could have served as the basis for a federal claim, the plaintiff has the prerogative to forgo the federal claim and assert only state law claims in order to prevent removal." Tavormina v. Evening Star Productions, Inc., 10 F.Supp.2d 729, 732 (S.D.Tex. 1998). "The rule makes the plaintiff the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law." Id. (quoting Caterpillar, Inc. v. Williams, 482 U.S. 386, 392, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987)). "Under the rule[,] a federal question must appear from the complaint and not from any preemption defense which might be raised in state court and which might ultimately defeat the cause of action." Moreau v. San Diego Transit Corp., 210 Cal.App.3d 614, 620–21, 258 Cal.Rptr. 647, 650 (1989).

 A corollary to the well-pleaded complaint doctrine is the doctrine of complete preemption.[4]

> Complete preemption, on the other hand, allows a claim to be removed and adjudicated in federal court. Removal is proper over preempted claims in which Congress clearly manifested an intent to convert state law claims into federal-question-claims. This occurs only in the rare situations when federal law so completely preempts state claims that the state claims must be recharacterized as federal law. This only happens in rare instances since this runs counter to the "well-pleaded complaint rule" which provides Plaintiffs the ability to formulate their own claim.

Id. at 820–21. In the present case, the potential copyright concerns were raised by Hendrickson in response to the Greens' counterclaim. As such, we consider the counterclaim as the complaint. See WILLIAM F. HARVEY, INDIANA PRACTICE, RULES OF PROCEDURE § 13.2(6) p. 476 (3d ed.1999) ("if a counterclaim is filed by a defendant, it is, of course, a claim or a 'complaint' made by the defendant against the plaintiff.").

---

3. For a discussion of general preemption questions and the three basic types: "(1) express preemption; (2) field (or implied) preemption; and (3) conflict preemption," see Worth v. Universal Pictures, Inc., 5 F.Supp.2d 816, 820 (C.D.Cal.1997).

4. In Worth v. Universal Pictures, Inc., 5 F.Supp.2d at 820, the court characterized preemption as "either defensive or complete." Id. The court noted:

> Defensive preemption is brought as an affirmative defense to a state claim. The party asserts that federal law "blots out" the state law claim. However, defensive preemption does not create federal subject matter jurisdiction, and can only support dismissal of the action by the state court, not removal. Once a determination is made that a state claim is preempted by federal law, state courts ordinarily still maintain concurrent jurisdiction. The only difference is that state courts are now required to apply the applicable federal law to the claim.

In some cases, however, a federal statute may completely preempt a plaintiff's state law claim and thus render an action removable despite the plaintiff's efforts to keep the action in state court. The "complete preemption" doctrine is thus an exception to the well-pleaded complaint rule. Under the complete preemption doctrine, Congress may so completely preempt a particular field that any complaint raising claims in that field is necessarily federal in nature.... It is well established that federal courts have exclusive original jurisdiction over claims of copyright infringement, see 28 U.S.C. § 1338(a), and that the Federal Copyright Statute, 17 U.S.C. § 101, et seq. .... completely preempts practically all state law causes of action falling within its scope.

*Tavormina*, 10 F.Supp.2d at 732 (citations omitted). Pursuant to the doctrine of complete preemption, a claim "couched in state contract or tort terms" will fall under federal jurisdiction "if the issues actually raise an essentially federal question." *Moreau*, 258 Cal.Rptr. at 650.

Building on the concept that some federal questions are only tangential to the state law claims, the court in *Durgom* determined that the state law claim was predominant and that the federal copyright matters that might arise within the state-law framework were not the essential issues:

"[A] right or immunity created by the Constitution or laws of the United States must be an element, and an essential one, of the plaintiff's cause of action." *Franchise Tax Bd. v. Const. Laborers Vac. Trust*, [463 U.S. 1, 10–11, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983) (quoting *Gully v. First Nat. Bank*, 299 U.S. 109, 112, 57 S.Ct. 96, 81 L.Ed. 70 (1936)) ].

"The mere fact that a controversy involves a patent or copyright does not give rise to federal jurisdiction." [(quoting *Muse v. Mellin*, 212 F.Supp. 315, 316 (S.D.N.Y.1962))]. "[T]he word 'copyright' is not so compelling as to invoke federal jurisdiction upon its mere mention. Congress left a considerable residue of power in the state courts to pass on 'copyright questions,' including questions involving constructions of the copyright statute...." [*Id.*].

"For example, '[f]ederal courts have no jurisdiction under [S]ection 1338(a) over actions that depend for their resolution on state laws governing contract enforcement or construction, or the ownership or transfer of property interests.'" [*Lukasewych v. Wells et al.*, 747 F.Supp. 1089, 1092, (S.D.N.Y.1990) (quoting 2 Goldstein, Copyright § 13.2.1.2 at p. 394 (1989))]; *accord, Borden v. Katzman* (11th Cir.1989) 881 F.2d 1035, 1038 ("Contract questions that depend upon common law or equitable principles belong in state court even if they involve copyrights."); *Saturday Evening Post Co. v. Rumbleseat Press, Inc.* (7th Cir.1987) 816 F.2d 1191, 1194 ("[A] dispute over the terms of a copyright license is not deemed to arise under the Copyright Act...."); *Dolch v. United California Bank* (9th Cir.1983) 702 F.2d 178, 180 ("Contract questions that depend on common law or equitable principles belong in state court.").

It is particularly relevant here that "[s]tate and not federal courts have jurisdiction in contract actions for nonpayment of royalties arising out of the exploitation of copyrighted works." [3 Nimmer & Nimmer, Nimmer on Copyright § 12.01(A)(2) at 12–18 (1999)].... "If the suit is one brought to enforce a right based upon a contract which relates to a copyrighted production, the suit is one which arises out of the con-

tract and is not one arising under the copyright statute, and the federal courts are without jurisdiction." [ (quoting *Danks v. Gordon,* 272 F. 821, 827 (2d Cir.1921)) ].

*Durgom,* 87 Cal.Rptr.2d at 622–23 (some citations omitted) (footnote supplied).

In *Olcott Int'l & Co. v. Micro Data Base Sys., Inc.,* No. IP99–1780–C–B/S, 2000 WL 892874 (S.D.Ind. June 29, 2000), the federal district court determined that within the context of predominantly state-law claims, a state court may include copyright defenses within its consideration of all of the matters in the interest of judicial economy and in an effort to prevent piecemeal litigation. The court recognized the state-law character of the defendant's copyright invalidity claim. *Id.* slip op. at *3.

The district court recognized the "well-pleaded complaint rule" and stated:

Our decision in this case might be different if we considered the state court incapable of resolving the federal copyright issue, because Olcott could then be prevented from obtaining comparable and comprehensive relief in state court. We harbor no such reservations about the state court's ability to apply federal law, nor does our circuit court, *even if the copyright issue is one normally within the exclusive jurisdiction of federal court.* Operating within the jurisdictional context of the well-pleaded complaint rule (an analogous doctrine we need not address in light of our stay of this action), Chief Judge Posner considered and acknowledged the expertise and ability of a state court to adjudicate copyright validity defenses raised by a state court defendant in a contract dispute. . . .

Slip op. at *4 (emphasis added).

The *Olcott* court commended the capable copyright analysis in *Bernstein v. Glavin,* 725 N.E.2d 455, 459–62 (Ind.Ct.App.2000).

Slip op. at *5. In *Bernstein,* this court discussed copyright matters within the context of contract issues and the plaintiff's claim of legal malpractice. *Bernstein,* 725 N.E.2d at 459–62; *see also Roberts v. Auto. Club of Mich.,* 138 Mich.App. 488, 360 N.W.2d 224, 227–28 (1985) (determining that a state action for intentional infliction of emotional distress was not preempted by the National Labor Relations Act because the federal question was peripheral, the court noted that the state's interest in regulating contracts outweighed "any possible interference with the federal labor laws that might result from permitting the action for breach of contract to proceed.").

 Resolution of the instant case turns upon the question of whether the dismissed portions of the Greens' counterclaim raise essentially copyright claims. The determination of whether state law claims interrelated to copyright claims are preempted by Section 301(a) of the Copyright Act requires consideration of two factors. *Nat'l Basketball Ass'n v. Motorola,* 105 F.3d 841, 848 (2nd Cir.1997). The parties agree that one factor has been satisfied: whether "the particular work to which the state law claim is being applied falls within the type of works protected by the Copyright Act ... styled the 'subject matter requirement.' " *See id.* The other factor, and the one upon which the Greens' appeal lies, is whether "the state law claim seeks to vindicate 'legal or equitable rights that are equivalent' to one of the bundle of exclusive rights already protected by copyright law ...—styled the 'general scope requirement.' " *See id.*

The court in *Tavormina* invoked the well-pleaded complaint doctrine to begin its preemption inquiry, and then analyzed the matter by employing the two-part test to determine whether the matters fall

"within the subject matter of copyright" and whether the matters are "equivalent" to any of the exclusive rights within federal copyright law. *Tavormina*, 10 F.Supp.2d at 732–34 (concluding that portions of the plaintiffs' claim for breach of contract, and the entire claim for unjust enrichment were preempted because they were equivalent to the claims that would be made, and the damages that are compensable, under copyright infringement); *accord Worth v. Universal Pictures, Inc.*, 5 F.Supp.2d 816 (C.D.Cal.1997). The parties agree that the first tier of the test is satisfied. The parties disagree on whether the matters are equivalent to any of the exclusive rights within copyright law.

■■■ For preemption purposes, rights "equivalent to" the exclusive rights under the Copyright Act, pursuant to 17 U.S.C. § 106, include the rights to reproduce, distribute, display, perform, and prepare derivative works based upon the copyrighted work. In *Selby v. New Line Cinema Corp.*, 96 F.Supp.2d 1053, 1059–61 (C.D.Cal.2000), the court noted that while a "bright-line" rule has not emerged:

> courts appear to have employed at least two distinct approaches in determining that claims for breach of contract do not protect rights equivalent to those protected by the Act: (1) the promise to perform the contract constitutes an extra element and (2) the limited scope of rights protected by contract is not equivalent to the universal scope of rights protected by copyright.

\* \* \* \* \*

Without explicitly adopting a different or third rationale for refusing to preempt a contract claim, some courts have premised their analysis not on the existence of an express promise nor on the conceptual difference between contract rights and copyrights, but on whether the specific contract alleged in the complaint protects or creates any rights not equivalent to the Act's exclusive prohibitions of unauthorized reproduction, performance, distribution or display.

*Id.* (citations omitted).[5]

Hendrickson argues that the Greens merely altered their original copyright infringement counterclaim to sound in contract, but that the contract claim is not qualitatively different than the copyright infringement claim. In short, Hendrickson urges that the only right the Greens seek to vindicate is the unauthorized reproduction of work in which they claim a copyright. *See Lennon v. Seaman*, 63 F.Supp.2d 428, 435 (S.D.N.Y.1999) (an extra element in a state law claim may avoid preemption, but it must "alter the nature of the claim such that it is qualitatively different from a claim pursuant to the federal copyright laws"). We disagree.

Here, the trial court determined that Section 3(C) of the Greens' counterclaim for royalties could implicate a copyright analysis, of the type in which state courts may not engage, if the court had to determine whether reproduced material was

---

5. In pressing their contention that the counterclaim can be adjudicated as a contract claim, the Greens chiefly rely upon *ProCD, Inc. v. Zeidenberg*, 86 F.3d 1447, 1453 (7th Cir.1996). In *Selby*, 96 F.Supp.2d at 1060, the court noted that the Seventh Circuit relied upon the nature of contracts in that they "affect only their parties; strangers may do as they please, so contracts do not create exclusive rights." *Id.* (quoting *ProCD*, 86 F.3d at 1454). It is noteworthy that *ProCD* concerns a contract for licensing of copyrighted material. Generally, copyright licensing agreements are not preempted. *Cf. Saturday Evening Post Co. v. Rumbleseat Press, Inc.*, 816 F.2d 1191, 1194 (7th Cir.1987) (a dispute over the terms of a copyright *license* is not deemed to arise under the Copyright Act). Also, the Seventh Circuit explicitly limited its decision to the circumstances in the case before it.

copyrighted by the Greens and required royalty payments. In an effort to avoid preemption concerns, the trial court limited the Greens' counterclaim within Section 3(C) "to ˙claims for royalties for books printed under [the] original and termination agreement[s]. . . ." (R. 225). The court determined that the whole of Section 3(D) would be preempted. Section 3(D) of the counterclaim specifically states that the claim is based upon Hendrickson's actions in "continuing to print additional copies of the books covered by the 1985 agreement." (R. 13).

Drawing upon the above analyses, it is apparent that any copyright considerations that the Greens' counterclaims touch upon are merely tangential to the contract claim. As noted above, "[t]he mere fact that a controversy involves a patent or copyright does not give rise to federal jurisdiction," and does not ipso facto require preemption. *Durgom*, 87 Cal. Rptr.2d at 622. The counterclaim allegations, on their face, do not demand a copyright analysis. Even absent a copyright, parties may contractually affect their relative rights, obligations and responsibilities. Instead, facially, they rely upon the royalty payments and other terms within the parties' contracts. The mere raising of the copyright specter does not demand a finding of preemption.

Hendrickson's anticipated defense to the counterclaims, *i.e.*, the Greens did not hold valid copyrights and thus the contract provisions do not control, interjected the tangential copyright issue. Viewing the Greens' counterclaim as the complaint, the well-pleaded complaint doctrine will not allow Hendrickson to alter the state law nature of the Greens' claims to require preemption.

■■ Also, we are mindful of the Greens' concern that they will not have a forum in which to litigate the dismissed

components of their counterclaim if the state court rejects those portions. Here, the federal court already has rejected jurisdiction over the earlier filed counterclaim. The court in *Moreau* noted that an order of remand by a federal court to a state court does not resolve the substantive law and is not based upon evidence, but merely constitutes a ruling on the allegations of the complaint. *Moreau*, 258 Cal.Rptr. at 650. Thus, the remand from federal court does not appear to impede a separate suit for the potential copyright matters.

■■■ However, if the Greens bring a separate original action based upon the dismissed components of the counterclaim, the compulsory counterclaim rules could act as a bar to the separate action "if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim. . . ." Fed.Rules of Civ. Proc. 13(a) (requiring compulsory counterclaims); Ind. Trial Rule 13(A). "[T]he phrase 'transaction or occurrence' is to be broadly defined so as to effectuate the rule's intended purpose of avoiding multiple lawsuits between the same parties arising from the same event or events." *Hotmix & Bitum. Equip., Inc. v. Hardrock Equip. Corp.*, 719 N.E.2d 824, 830 (Ind.Ct. App.1999) (quoting *Reddick v. Carfield*, 656 N.E.2d 518, 522 (Ind.Ct.App.1995)). "As such, two causes of action are said to arise from the same transaction or occurrence if there is a logical relationship between them, meaning that the counterclaim arises from the same aggregate set of operative facts as the opposing party's claim." *Hotmix*, 719 N.E.2d at 830. A failure to file a compulsory counterclaim in the initial action results in that claim forever being barred. *Id.*

Here, both the allegations by Hendrickson in its complaint and the entirety of the Greens' counterclaim stem from the al-

leged breaches of the original and the termination agreements. Thus, the matters asserted within the counterclaim arise from the same transaction or occurrence as the matters asserted within Hendrickson's complaint.

In summary, it is not entirely clear that copyright concerns will play a significant role in the presentation of evidence or the trial court's determination. Thus, we cannot say that copyright matters will be "an element, and an essential one," of the cause of action. *See Durgom,* 87 Cal. Rptr.2d at 622. The trial court erred in determining that it did not have subject-matter jurisdiction over portions of Section 3(C) and the entirety of Section 3(D) in the Greens' counterclaim because those sections would necessarily require a copyright analysis of the type that is preempted.

Reversed.

BROOK, J., and ROBB, J., concur.