[No. B148827. Second Dist., Div. Five. Sept. 26, 2002.]

SEYED E. KABEHIE et al., Plaintiffs and Appellants, v.
FARID ZOLAND et al., Defendants and Respondents.

514

516

**COUNSEL**

Thomas N. Cano for Plaintiffs and Appellants.

Law Offices of Steven T. Lowe and Steven T. Lowe for Defendants and Respondents.

**OPINION**

**GRIGNON, Acting P. J.**—This case involves causes of action for breach of contract, fraud and interference with economic relations, arising out of contracts for the purchase of exclusive rights to music compositions. The trial court granted defendants' motion for judgment on the pleadings on the ground these state law causes of action were preempted by federal copyright law. We conclude that such state law causes of action are preempted by federal copyright law only to the extent they assert rights equivalent to the exclusive rights protected by federal copyright law. State law causes of action are not preempted if they require elements that are qualitatively different from the elements of a federal copyright infringement action. This is the "extra element" test for federal copyright preemption. In the context of a breach of contract cause of action, the extra element is not supplied by the mere breach of a promise giving rise to rights equivalent to copyright

protection; the extra element must be a contractual promise creating a right not existing under federal copyright law. We conclude some of the causes of action are preempted and others are not. We reverse with directions to grant the motion in part and deny it in part.

## FACTS AND PROCEDURAL BACKGROUND

Plaintiffs and appellants Seyed E. Kabehie and his production company Pars Video, Inc. (collectively Pars) duplicate, advertise, and sell music cassettes, videotapes, and compact discs. Defendant and respondent Farid Zoland is a music composer and producer. Zoland and defendant and respondent Mehin Abadani conduct business together through their production company, defendant and respondent Avang Music Company (collectively Avang).

Commencing August 1984, Pars entered into a number of contracts with Avang to purchase Avang's exclusive rights, titles and interests in several albums of music composed, arranged and produced by Zoland. In addition, Pars purchased third parties' interests in certain albums of music that had previously been owned by or in partnership with Avang. On December 23, 1989, Pars agreed to pay Avang $24,000 for the exclusive rights to four albums of music. The master recordings for the four albums were to be delivered to Pars by Avang. On January 17, 1995, Pars agreed to pay Avang $25,000 for the exclusive rights to three as yet unrecorded albums of music. The master recordings for the three new albums were to be delivered to Pars by Avang in March, May and July 1995, respectively.

Avang breached the agreements by producing, duplicating, advertising and selling the musical materials covered by the agreements and otherwise interfering with Pars's property rights in the musical materials. Avang also breached the December 23, 1989 agreement by refusing to deliver the master recordings for three of the four albums to Pars. In August 1995, Avang breached the January 17, 1995 agreement to deliver the master recordings for three new albums of music by failing to deliver any of the master recordings.

On April 1, 1999, Pars filed a first amended complaint against Avang alleging breach of contract, rescission, common counts, accounting, interference with economic relations and fraud. On August 4, 2000, Avang filed a motion for judgment on the pleadings on the ground of preemption by federal copyright law. The trial court granted the motion with leave to

amend. No amended complaint was filed. The trial court dismissed the complaint. Pars appealed.[1]

DISCUSSION

*Standard of Review*

■ A motion for judgment on the pleadings may be made on the same ground as for a general demurrer, that the pleading at issue fails to state facts sufficient to constitute a legally cognizable claim or defense. (*Colberg, Inc. v. State of California ex rel. Dept. Pub. Wks.* (1967) 67 Cal.2d 408, 411-412 [62 Cal.Rptr. 401, 432 P.2d 3]; *Sofias v. Bank of America* (1985) 172 Cal.App.3d 583, 586 [218 Cal.Rptr. 388]; Code Civ. Proc., § 438, subd. (c)(1)(B)(ii).) Our review is guided by the same rules governing the review of the sustaining of a general demurrer. " 'We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.] We also consider matters which may be judicially noticed.' [Citation.] Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.]" (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58].) Where a plaintiff is given leave to amend and chooses not to do so, we examine the complaint only to find whether it states a cause of action, not to determine whether plaintiff might have been able to state one. (*Pavlovsky v. Board of Trade* (1959) 171 Cal.App.2d 110, 115 [340 P.2d 63].)

*Federal Copyright Law*

The 1976 Copyright Act (the Act) extends federal copyright protection to "original works of authorship fixed in any tangible medium of expression." (17 U.S.C. § 102(a).) Works of authorship include musical works. (*Ibid.*) Section 106 of the Act grants the copyright owner exclusive rights to reproduce, adapt, distribute, perform, and display the copyrighted work. (17 U.S.C. § 106.)[2]

■ " ' "[W]hen acting within constitutional limits, Congress is empowered to pre-empt state law by so stating in express terms. [Citation.]" ' "

---

[1] A federal action between the parties, commenced May 2001, is pending.

[2] Section 106 provides in pertinent part "the owner of copyright under this title has the exclusive rights to do and to authorize any of the following: [¶] (1) to reproduce the copyrighted work . . . ; [¶] (2) to prepare derivative works based upon the copyrighted work; [¶] (3) to distribute copies . . . to the public by sale or other transfer of ownership, or by rental, lease, or lending; [¶] (4) [if applicable] to perform the copyrighted work publicly; [¶] (5) [if applicable] to display the copyrighted work publicly; and [¶] (6) in the case of sound recordings, to perform the copyrighted work publicly by means of a digital audio transmission." (17 U.S.C. § 106.)

(*KNB Enterprises v. Matthews* (2000) 78 Cal.App.4th 362, 368 [92 Cal.Rptr.2d 713].) Section 301(a) of the Act[3] expressly preempts state laws that protect "legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by [section 106]." (*Balboa Ins. Co. v. Trans Global Equities* (1990) 218 Cal.App.3d 1327, 1339 [267 Cal.Rptr. 787].) Section 301(b) represents the obverse of subsection (a), allowing states to regulate "activities violating legal or equitable rights that are not equivalent to any of the exclusive rights within the general scope of copyright as specified by [section 106]." (17 U.S.C. § 301(b).) The Act does not preempt all state common law affecting copyright material, but only state common law meeting two conditions. (*United States Golf Assn. v. Arroyo Software Corp.* (1999) 69 Cal.App.4th 607, 621 [81 Cal.Rptr.2d 708].) "Thus, for preemption to occur under the Act, two conditions must be met: first, the subject of the claim must be a work fixed in a tangible medium of expression and come within the subject matter or scope of copyright protection . . . , and second, the right asserted under state law must be equivalent to the exclusive rights contained in section 106." (*Fleet v. CBS, Inc.* (1996) 50 Cal.App.4th 1911, 1918-1919 [58 Cal.Rptr.2d 645]; accord, *KNB Enterprises v. Matthews, supra,* 78 Cal.App.4th at p. 369.)

In this case, the state claims are based on musical works within the subject matter of copyright. We are concerned with only the "right equivalent to copyright" condition. "[I]n essence, a right that is 'equivalent to copyright' is one that is infringed by the mere act of reproduction, performance, distribution, or display." (1 Nimmer on Copyright (2002) § 1.01[B][1], p. 1-12, fns. omitted (hereinafter Nimmer).) If the act of reproduction, performance, distribution or display will *in itself* infringe the state-created right, then such right is preempted. (*Id.* at p. 1-13.) Such a state right is preempted even if the state-created right is broader or narrower than the comparable federal right. (*Id.* at pp. 1-11 to 1-12.) "But if qualitatively other elements are required, instead of, or in addition to, the acts of reproduction, performance, distribution, or display, in order to constitute a state-created cause of action, then the right does not lie 'within the general scope of copyright,' and there is no pre-emption." (*Id.* at p. 1-13.)

Nimmer's analysis of federal copyright preemption is referred to as the "extra element" test. (*Balboa Ins. Co. v. Trans Global Equities, supra,* 218

[3]Section 301(a) provides: "On and after January 1, 1978, all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright as specified by sections 102 and 103, whether created before or after that date and whether published or unpublished, are governed exclusively by this title. Thereafter, no person is entitled to any such right or equivalent right in any such work under the common law or statutes of any State." (17 U.S.C. § 301(a).)

Cal.App.3d at p. 1340.) To avoid preemption, the extra element must be one that changes the nature of the action so that it is *qualitatively different* from a copyright infringement claim. (*Ibid.*) "In a proper case, the same conduct may support relief under multiple theories. Preemption law, however, requires analysis of each theory to determine whether it contains the necessary qualitatively different extra element distinguishing it from copyright protection." (*Id.* at p. 1342, fn. omitted.)

The California Supreme Court has not addressed the issue of federal copyright preemption of state actions. California Courts of Appeal have generally adopted Nimmer's extra element test for federal copyright preemption. (*KNB Enterprises v. Matthews, supra,* 78 Cal.App.4th at p. 373; *Fleet v. CBS, Inc., supra,* 50 Cal.App.4th at p. 1924; *Balboa Ins. Co. v. Trans Global Equities, supra,* 218 Cal.App.3d at p. 1340.) However, no California Court of Appeal has applied the extra element test in the context of a breach of contract cause of action. (Cf. *Durgom v. Janowiak* (1999) 74 Cal.App.4th 178, 186-187 [87 Cal.Rptr.2d 619] [breach of contract action for failure to pay royalties did not involve use of underlying copyrighted material and was therefore not preempted by federal copyright law].)

*Breach of Contract*

We must determine whether federal copyright law preempts a state law breach of contract action concerning material within the subject matter of copyright. Using Nimmer's extra element test, we focus on whether the breach of contract action includes an extra element that makes it qualitatively different from a copyright infringement action, and therefore, avoids preemption. One approach is that breach of contract actions are never preempted. This approach is based on the theory that a breach of contract includes a promise and the existence of the promise is the extra element avoiding preemption. (*Taquino v. Teledyne Monarch Rubber* (5th Cir. 1990) 893 F.2d 1488, 1501; *Architectronics, Inc. v. Control Systems, Inc.* (S.D.N.Y. 1996) 935 F.Supp. 425, 438-439.) A second approach is a fact-specific analysis of the particular promise alleged to have been breached and the particular right alleged to have been violated. (*National Car Rental v. Computer Associates* (8th Cir. 1993) 991 F.2d 426, 429-430.)

We agree with the second approach: A fact-specific analysis of the particular promise alleged to have been breached and the particular right alleged to have been violated. This conclusion is based on the language of the statute, the legislative history of the Act, and the opinions of the majority of courts that have considered the issue.

1. *Statutory Construction*

In determining whether federal law preempts a state statute, "our sole task is to ascertain the intent of Congress." (*California Federal S. & L.*

*Assn. v. Guerra* (1987) 479 U.S. 272, 280 [107 S.Ct. 683, 689, 93 L.Ed.2d 613].) "Express preemption occurs when Congress has expressly stated its intent to supersede state law. This often requires an inquiry into statutory construction." (*Worth v. Universal Pictures, Inc.* (C.D.Cal. 1997) 5 F.Supp.2d 816, 820.) When interpreting the meaning of a statute, we look first to the statutory language. (*Kane v. Hurley* (1994) 30 Cal.App.4th 859, 862 [35 Cal.Rptr.2d 809].) The Act expressly preempts state law causes of action that protect rights equivalent to the exclusive rights protected by federal copyright law. Conversely, the Act expressly reserves to the states the protection of rights that are not equivalent to the exclusive rights protected by federal copyright law. This concurrent preemption and reservation evidences the intent of Congress to preempt only some state laws involving materials within the subject matter of copyright. Thus, federal copyright preemption is based not only on the nature of the work of authorship, but also on the nature of the rights protected.

The Act's express federal preemption was a major change from prior federal copyright law. Prior to 1976, the federal government did not occupy the field of copyright protection. Federal copyright law applied only to some classes of copyrightable materials. For example, the protection of federal copyright law was not available if the material was unregistered or unpublished. State copyright law filled the gaps in the federal copyright law. In 1976, Congress determined that a single federal copyright system was necessary. Congress found that it was harmful for creators of copyrightable materials to be required to meet different standards in the 50 states. In addition, certain aspects of federal copyright law were inconsistent with international copyright law, making international enforcement of copyright difficult. From these considerations, the Act was adopted. (H.R.Rep. No. 94-1476, 2d Sess., p. 129 (1976).)

The purpose of the Act was to create a uniform national copyright law protecting certain rights, such as reproduction, performance, distribution, and display. To the extent enforcement of those protected rights was at issue, the Act preempted all state law, including common law causes of action. However, Congress did not intend to occupy the entire field. Such a broad preemption would have required any action involving materials within the subject matter of copyright to be brought in federal court. Instead, Congress intended to preempt enforcement of the specific rights protected by the Act, but leave to the states the enforcement of other state law rights, such as breach of contract. (H.R.Rep. No. 94-1476, 2d Sess., p. 132 (1976).)

Thus, the language of the Act supports a conclusion that Congress intended to preempt most breach of contract actions, but not all. (*Durgom v. Janowiak, supra,* 74 Cal.App.4th at p. 182.) Congress intended to preempt

those breach of contract actions seeking to protect rights equivalent to the exclusive rights protected by federal copyright law. In other words, Congress intended to preempt those breach of contract actions seeking to enforce the plaintiff's exclusive right to reproduce, perform, distribute or display copyrightable material. Thus, copyright preemption requires a fact-specific analysis of the promise breached and the right violated.

### 2. *Legislative History*

In construing a statute, " '[b]oth the legislative history of the statute and the wider historical circumstances of its enactment may be considered in ascertaining the legislative intent.' " (*Kane v. Hurley, supra,* 30 Cal.App.4th at p. 862.) The legislative history of the Act supports our conclusion that breach of contract actions protecting rights equivalent to the exclusive rights of federal copyright are preempted by federal copyright law. The original draft of 17 United States Code section 301(b) set forth a list of examples of rights that were not equivalent to any of the exclusive rights of copyright, "including breaches of contract, breaches of trust, invasion of privacy, defamation, and deceptive trade practices such as passing off and false representation." (1 Nimmer, *supra,* § 1.01[B][1], pp. 1-14 to 1-15.)[4]

Before the bill was sent to the floor of the House of Representatives, several additional state-created rights were added to the list of examples immune from preemption, including misappropriation. (1 Nimmer, *supra,* § 1.01[B][1][f][i], p. 1-28.2.) During the debate of the bill on the floor of the House, concerns were raised about the list of nonpreempted state law causes of action in the Act. An amendment to the bill deleting the list from the Act was proposed in order to prevent the list from inadvertently nullifying federal preemption. The proponent of the amendment was concerned that an enumerated state law could be so broad as to render federal preemption meaningless. (Remarks of Rep. Seiberling (122 Cong. Rec. H.10910 (daily ed. Sept. 22, 1976)).) Ultimately, "this specific list of examples was deleted, and no list appears in the version of § 301 that was enacted as part of the

---

[4]A report of the House of Representatives explained that the examples were initially included "to illustrate rights and remedies that are different in nature from the rights comprised in a copyright and that may continue to be protected under State common law or statute. The evolving common law rights of 'privacy,' 'publicity,' and trade secrets, and the general laws of defamation and fraud, would remain unaffected as long as the causes of action contain elements, such as an invasion of personal rights or a breach of trust or confidentiality, that are different in kind from copyright infringement. Nothing in the bill derogates from the rights of the parties to contract with each other and to sue for breaches of contract; however, to the extent that the unfair competition concept known as 'interference with contract relations' is merely the equivalent of copyright protection, it would be preempted." (H.R.Rep. No. 94-1476, 2d Sess., p. 132 (1976).)

Copyright Act in 1976." (*Architectronics, Inc. v. Control Systems, Inc., supra,* 935 F.Supp. at p. 440.)[5]

Thus, the legislative history supports the conclusion that most, but not all, breach of contract actions are preempted by the Act. Congress was apparently concerned that a list of specific nonpreempted causes of action could be overbroad and inadvertently exclude from preemption actions Congress intended to preempt. Congress instead chose to utilize an "equivalent to copyright" preemption test rather than a specific list of nonpreempted actions. In deleting the list, however, Congress did not intend to indicate that the actions previously included in the list were always preempted. (1 Nimmer, *supra,* § 1.10[B][1][f][i], p. 1-28.2; contra, *Wolff v. Institute of Elec. & Electronics Eng.* (S.D.N.Y. 1991) 768 F.Supp. 66, 69 [deletion of safe harbor for breach of contract claims suggests intention to preempt breach of contract claims].) "[T]here is nothing in the legislative history or elsewhere to suggest that this was the motive behind the deletion. In fact, the deletion did nothing to change the general rule that non-preempted claims include any claims based on 'rights that are not equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106.' (17 U.S.C. § 301 (1994).) The only material difference between the preliminary version of the statute and the enacted version is that the preliminary version supplied examples of non-preempted causes of action while the enacted version did not. ■ That a clause has been deleted from a draft of a statute, without more, does not mean that the polar opposite of the clause was enacted, particularly when the clause in question did no more than provide a list of examples that did not purport to be exhaustive." (*Architectronics, Inc. v. Control Systems, Inc., supra,* 935 F.Supp. at p. 441.)

■ As the legislative history suggests, Congress intended to preempt breach of contract causes of action that protect rights equivalent to any of the rights protected by federal copyright law. Therefore, although most breach of contract causes of action would not be preempted, Congress removed the blanket exemption for specific state causes of action, such as breach of contract, in order that any action equivalent to a copyright infringement action would be preempted.

3. *Case Law*

A survey of the relevant case law indicates that breach of contract causes of action are generally found not to be preempted; however, the various

---

[5]The legislative history of the Act has been described as "confusing, even ambiguous" (*Balboa Ins. Co. v. Trans Global Equities, supra,* 218 Cal.App.3d at p. 1349, fn. 31), as well as "puzzling and unreliable" (*Architectronics, Inc. v. Control Systems, Inc., supra,* 935 F.Supp. at p. 440). This is due in part to the floor discussion by three Representatives in which they " 'agreed that the examples should be deleted[,] but seemed to differ on whether this action was to limit or expand preemption.' " (*Balboa Ins. Co. v. Trans Global Equities, supra,* 218 Cal.App.3d at p. 1349, fn. 31.)

courts have used different analytical structures when considering preemption of breach of contract actions. (*Lennon v. Seaman* (S.D.N.Y. 1999) 63 F.Supp.2d 428, 437; see also *Green v. Hendrickson Publishers, Inc.* (Ind.Ct.App. 2001) 751 N.E.2d 815, 823.) ▮ The cases that have decided the issue of federal copyright preemption of state breach of contract causes of action can be roughly divided into two groups: (1) a minority of the cases hold state breach of contract causes of action are never preempted by federal copyright law; and (2) a majority of the cases hold state breach of contract actions are not preempted by federal copyright law when they seek to enforce rights that are qualitatively different from the exclusive rights of copyright.[6] We address both positions. We adopt the majority view.

### A. *Never Preempted*

A few courts have concluded that breach of contract actions are never preempted by federal copyright law, because the promise to perform the contract automatically constitutes the extra element that makes the action qualitatively different from a copyright infringement action. (*Taquino v. Teledyne Monarch Rubber, supra,* 893 F.2d at p. 1501; *Architectronics, Inc. v. Control Systems, Inc., supra,* 935 F.Supp. at pp. 438-439.)[7] These courts are in the distinct minority.[8]

---

[6]Several authorities have ascribed a third classification to *Wolff v. Institute of Elec. & Electronics Eng., supra,* 768 F.Supp. at page 69, namely, state breach of contract actions are always preempted by federal copyright law. We do not read *Wolff* as so holding. The opinion includes language referring to the elimination of the exemption list from the statute and reasoning that the deletion of breach of contract from the safe harbor list suggests an intent to preempt breach of contract actions. However, the opinion properly concludes that the particular breach of contract action before the court was not qualitatively different from a copyright infringement action and was therefore preempted.

[7]One court has concluded contract rights are not equivalent to copyright, because contract rights are not exclusive rights that may be asserted against the world. (*ProCD, Inc. v. Zeidenberg* (7th Cir. 1996) 86 F.3d 1447, 1454-1455.) However, the fact that a contract action is limited to the contracting parties does not make the action qualitatively different from a copyright infringement action. If the right created by contract is the equivalent of the protection provided by copyright, the protection provided by contract is simply narrower than the protection provided by copyright. Such a breach of contract action should nevertheless be preempted. We note that the same court stated: "[W]e think it prudent to refrain from adopting a rule that anything with the label 'contract' is necessarily outside the preemption clause: the variations and possibilities are too numerous to foresee." (*Id.* at p. 1455.)

[8]Because the contracts at issue in this case concerned copyrightable material, we do not analyze the proper application of the two-part preemption test in a breach of contract case based on material that comes within the scope of copyright, but is expressly not copyrightable under federal copyright law. (See *Lipscher v. LRP Publications, Inc.* (11th Cir. 2001) 266 F.3d 1305, 1318-1319 [breach of contract action concerning material not protected by copyright was not equivalent to the exclusive rights of copyright]; *Rokos v. Peck* (1986) 182 Cal.App.3d 604, 614 [227 Cal.Rptr. 480] [" 'the policy that precludes protection of an abstract idea by copyright does not prevent its protection by contract' "].)

Nimmer too appears to state in his treatise that the promise inherent in a contract is the extra element that prevents preemption of a breach of contract cause of action. (1 Nimmer, *supra*, § 1.01[B][1][a], p. 1-15.) "[A] breach of contract action . . . is not predicated upon a right that is 'equivalent to any of the exclusive rights within the general scope of copyright . . . .' This for the reason that a contract right may not be claimed unless there exists an element in addition to the mere acts of reproduction, performance, distribution or display. That additional element is a promise (express or implied) upon the part of the defendant." (4 Nimmer, *supra*, § 16.04[C], p. 16-25, fns. omitted.) "Without a promise there is no contract, while a promise on the part of one who engages in unlicensed reproduction or distribution is not required in order to constitute him a copyright infringer." (1 Nimmer, *supra*, at § 1.01[B][1][a], p. 1-15, fns. omitted.) Nimmer reiterates that, although the preemption language of the Act is arguably broad enough to refer to breach of contract causes of action, because contract rights are founded on promises, they are not equivalent to copyright. (*Id.* at p. 1-15, fn. 68.1.)

However, despite the passages quoted above, Nimmer notes, "at times a breach of contract cause of action can serve as a subterfuge to control nothing other than the reproduction, adaptation, public distribution, etc. of works within the subject matter of copyright." (1 Nimmer, *supra*, § 1.01[B][1][a], p. 1-19.) "[I]t thus appears that the rule safeguarding contract causes of action against copyright pre-emption is less than categorical. Although the vast majority of contract claims will presumably survive scrutiny . . . nonetheless pre-emption should continue to strike down claims that, though denominated 'contract,' nonetheless complain directly about the reproduction of expressive materials." (*Id.* at p. 1-22, fns. omitted.)

We agree with Nimmer's proviso. The promise alleged to have been breached in a breach of contract action does not always make the contract action qualitatively different from a copyright infringement action. If the promise was simply to refrain from copying the material or infringing the rights protected by copyright, then the promisor has promised nothing more than that which was already required under federal copyright law. The promise not to infringe adds nothing to a breach of contract action for copyright infringement. A breach of contract action based on this type of promise must be preempted in order to prevent parties from circumventing federal copyright law and nullifying the preemption provided for in 17 United States Code section 301. Otherwise, the copyright owner or licensee would be required to determine the rights available under the different contract laws in the various states, defeating the purpose of establishing one federal copyright system. "The troubling aspect of [the analysis that the promise inherent in every contract is the extra element] is that conceivably

the promise may not really be an 'additional element.' Suppose, *e.g.*, that the defendant promised 'I will not infringe any copyright or copyright protection in the script you are proposing to show me.' In that case, the very promise is so inextricably entwined with the copyright that to permit the promisee to sue upon it would undermine the preemption feature of the Copyright Act." (*Selby v. New Line Cinema Corp.* (C.D.Cal. 2000) 96 F.Supp.2d 1053, 1060.)

## B. *Fact-specific Analysis*

The majority of courts that have considered the breach of contract/federal copyright preemption issue have used a fact-specific analysis. Many courts have concluded that the particular promise alleged to have been breached was not the equivalent of copyright and therefore the breach of contract action was not preempted. (*National Car Rental v. Computer Associates, supra,* 991 F.2d at pp. 429-430 [breach of promise not to use computer program to process third party's data]; *Acorn Structures, Inc. v. Swantz* (4th Cir. 1988) 846 F.2d 923, 926 [promise to buy architectural plans or building materials from plaintiff if defendant used plaintiff's plans]; *Lennon v. Seaman, supra,* 63 F.Supp. at p. 438 [right under employee confidentiality agreement to prevent disclosure of information]; *Chesler/Perlmutter Prods. v. Fireworks Entertain.* (C.D.Cal. 2001) 177 F.Supp.2d 1050, 1058 [promises to pay specific amounts and hire particular employees]; *Durgom v. Janowiak, supra,* 74 Cal.App.4th at pp. 186-187 [right to receive royalties]; *Brignoli v. Balch Hardy and Scheinman, Inc.* (S.D.N.Y. 1986) 645 F.Supp. 1201, 1205 [promise to pay].)[9] In another context, courts have held a breach of an independent covenant of a copyright license, such as a promise to pay

---

[9]Another line of cases exists concerning the breach of implied-in-fact contracts. Courts have similarly applied a fact-specific analysis to determine whether breach of implied-in-fact contract actions are preempted by federal copyright law and found that the breach of a promise to pay is not equivalent to copyright. (*Wrench LLC v. Taco Bell Corp.* (6th Cir 2001) 256 F.3d 446, 456 ["[The breach was] not the use of the work alone but the failure to pay for it . . . . Thus, the state law right is not abridged by an act which in and of itself would infringe one of the exclusive rights granted by [section] 106, since the right to be paid for the use of the work is not one of those rights. [¶] . . . The extra element is the promise to pay. This extra element does change the nature of the action so that it is qualitatively different from a copyright infringement claim."]; *Firoozye v. Earthlink Network* (N.D.Cal. 2001) 153 F.Supp.2d 1115, 1127; *Katz Dochrermann & Epstein, Inc. v. Home Box Office* (S.D.N.Y. Mar. 31, 1999, No. 97-CIV.7763) 1999 WL 179603; see also *Rokos v. Peck, supra,* 182 Cal.App.3d at p. 617 [implied-in-fact contract is effective only between the contracting parties, creates rights that are qualitatively different from copyright protection, and protects disclosure of ideas without creating a monopoly in the ideas involved]; but see *Selby v. New Line Cinema Corp., supra,* 96 F.Supp.2d at pp. 1061-1062 [applying fact-specific analysis, but finding promise to pay for use of ideas was equivalent to exclusive rights protected by federal copyright law]; *Metrano v. Fox Broadcasting Co., Inc.* (C.D.Cal. Apr. 24, 2000, No. CV-00-02279) 2000 WL 979664 [implied contract regulated use of ideas and materials; therefore, the contract rights were equivalent to copyright]; *Endemol Entertainment B.V. v. Twentieth Television, Inc.* (C.D.Cal. 1998) 48 U.S.P.Q.2d (BNA) 1524, 1528 [implied contracts do not

royalties, is not a copyright infringement action, but a breach of contract action. (*Graham v. James* (2d Cir. 1998) 144 F.3d 229, 235-237; *Effects Associates, Inc. v. Cohen* (9th Cir. 1990) 908 F.2d 555, 559; *U.S. Naval Institute v. Charter Communications* (2d Cir. 1991) 936 F.2d 692, 695.)[10]

Similarly, other courts have concluded on the facts presented that the particular promise alleged to have been breached in the contract action is the equivalent of one or more of the rights protected under copyright and the promise cannot be the extra element distinguishing the contract action from a copyright infringement action. These courts have found preemption. (*American Movie Classic v. Turner Entertainment Co.* (S.D.N.Y. 1996) 922 F.Supp. 926, 931-932 [exclusive exhibition rights violated]; *Berkla v. Corel Corp.* (E.D.Cal. 1999) 66 F.Supp.2d 1129, 1150 [release of protected images to the public]; *Smith v. Weinstein* (S.D.N.Y. 1984) 578 F.Supp. 1297, 1307 [copying of plaintiff's script]; *Wolff v. Institute of Elec. & Electronics Eng., supra*, 768 F.Supp. at p. 69 [violation of one-time use of photo on magazine cover].)

■ We agree with the majority view. The mere breach of the promise inherent in every contract does not constitute the requisite extra element unless the promise creates a right qualitatively different from copyright. A right that is qualitatively different from copyright includes a right to payment, a right to royalties, or any other independent covenant. These qualitatively different rights constitute the requisite extra element. These breach of contract actions are not preempted by federal copyright law. If, however, the promise is equivalent to copyright, the breach of the promise is not the extra element making the action qualitatively different from copyright. In such a case, there is simply no consideration for the promise. The promisor has merely agreed to do that which the promisor is already obligated to do under federal copyright law.

*Pars's Contract Causes of Action*

■ In this case, Pars alleged seven breach of contract causes of action based on the rights to seven different musical compilations. For each breach

have specific written promises that provide the extra element]; *Entous v. Viacom Intern., Inc.* (C.D.Cal. 2001) 151 F.Supp.2d 1150, 1159-1160 [implied promise not to use the plaintiff's materials without compensation is equivalent to copyright]; *Fischer v. Viacom Intern., Inc.* (D.Md. 2000) 115 F.Supp.2d 535, 541-542; *Worth v. Universal Pictures, Inc., supra*, 5 F.Supp.2d at pp. 821-822.)

[10]One case purports to rely on the holding of *Architectronics, Inc. v. Control Systems, Inc., supra*, 935 F.Supp. 425, that the contract promise always supplies the extra element and the holding of *ProCD, Inc. v. Zeidenberg, supra*, 86 F.3d 1447, that contract rights are not equivalent to copyright because they do not create exclusive rights, but instead applies a fact-specific analysis to determine that the particular promises alleged to have been breached were not the equivalent of rights protected by copyright. (*Video Pipeline v. Buena Vista Home Entertainment* (D.N.J. 2002) 210 F.Supp.2d 552, 566-567.)

of contract cause of action to survive preemption, Pars was required to allege an element beyond unauthorized reproduction or distribution. Moreover, that element must have made the state claim qualitatively different from a copyright infringement claim.

In the first, second, third, fifth, and sixth breach of contract causes of action, Pars alleged that it purchased the exclusive rights to musical compilations and Avang breached the agreements by "producing, duplicating, selling, advertising and otherwise marketing and distributing such musical materials and copies thereof in various forms, by claiming ownership of and otherwise interfering with [Pars's] property rights in such musical materials." These are simply the reproduction and distribution rights protected by federal copyright law. There is no "extra element" alleged that makes the causes of action qualitatively different from a copyright infringement action. Therefore, these causes of action are preempted.

Pars's fourth cause of action for breach of contract alleges that in addition to unauthorized reproduction and distribution of the musical material, Avang breached the December 23, 1989 agreement by "failing and refusing continuously to the present to deliver to [Pars] the master recording or copies of the [musical compilations subject to the agreement]." Avang's failure to deliver master recordings as provided under the parties' agreement is an extra element that is different from a copyright infringement claim. Therefore, the breach of contract action is not preempted.

The seventh cause of action for breach of the January 17, 1995 agreement alleges that Avang failed to deliver three musical compilations as provided under the parties' agreement. This cause of action does not allege the unauthorized reproduction of expressive materials. We conclude there is no preemption of the seventh cause of action. As a result, the eighth cause of action for rescission of the January 17, 1995 agreement is also not preempted.

*Pars's Fraud Cause of Action*

In the fraud cause of action, Pars additionally alleged that prior to entering into each agreement, Avang made certain representations. It represented that it owned the rights, titles and interests in each album and each of the musical works contained in the album. It promised to transfer the rights to Pars, including the master recordings and the rights to all revenues derived from the sale of each album and the musical work contained therein. It promised not to duplicate or sell the music in any form. However, in fact, Avang did not own the rights, titles and interest to the albums; did not intend to transfer

the rights to Pars exclusively; and intended to produce and sell the music in various forms and interfere with Pars's business. Avang made the representations with the intent to defraud Pars.

On appeal, Pars contends the fraud cause of action is not preempted. We agree. "Under the extra element test, it is clear that federal copyright law does not preempt state causes of action alleging fraud . . . . Fraud involves 'the extra element of misrepresentation.' [Citation.]" (*Gladstone v. Hillel* (1988) 203 Cal.App.3d 977, 987 [250 Cal.Rptr. 372].) The fraud cause of action in this case is not preempted, because it contains extra elements including the allegations that Avang misrepresented its ownership of the rights to the music compositions and falsely promised to deliver master recordings.

*Pars's Other Causes of Action*

Pars's ninth and tenth causes of action for money had and received and an accounting attempt to recover proceeds from Avang's unauthorized reproduction and distribution of the material. Because these causes of action are not qualitatively different from a copyright infringement action, they are preempted. (See *Motown Record Corp. v. George A. Hormel & Co.* (C.D.Cal. 1987) 657 F.Supp. 1236, 1241.)

Pars's causes of action for intentional interference with obligation of contract (11th), intentional interference with economic relations (12th), and negligent interference with prospective economic advantage (13th) are also preempted, because the interfering conduct alleged is simply the reproduction and distribution of the musical materials covered by the written agreements. (*Motown Record Corp. v. George A. Hormel & Co., supra,* 657 F.Supp. at p. 1240; cf. *PMC, Inc. v. Saban Entertainment, Inc.* (1996) 45 Cal.App.4th 579, 594 [52 Cal.Rptr.2d 877] [gravamen of allegations was that plaintiff was prevented from finalizing a deal, not that plaintiff's copyrighted material was wrongfully used].)

### DISPOSITION

The judgment of dismissal and the order granting the motion for judgment on the pleadings are reversed. The trial court is directed to enter a new and different order granting the motion as to the first, second, third, fifth, sixth, ninth, 10th, 11th, 12th and 14th causes of action and denying the motion as to the fourth, seventh, eighth and 14th causes of action. Appellants Seyed E. Kabehie and Pars Video, Inc., are awarded their costs on appeal.

Armstrong, J., concurred.

**MOSK, J.**—I concur.

A contract claim is qualitatively different from a copyright infringement claim and should not be preempted unless the contract claim is based upon the enforcement or determination of federal copyright law. Thus, I do not agree with the majority's "fact-specific analysis" to determine the existence of preemption.

I concur in the majority's determination in this case as to the noncontract-related claims. I also concur in the majority's conclusion with respect to the contract and contract-related claims because the pleadings of those causes of action are deficient. The allegations in the complaint show that in some instances plaintiffs did not have a contractual relationship with defendants in connection with the musical properties. It appears that in some instances the transferors just transferred whatever rights they had; plaintiffs did not plead explicitly that they had all rights in the properties. Plaintiffs did not plead that there was any promise or agreement, express or implied, that defendants would not use the properties. It is unclear if the copyrights were transferred or whether plaintiffs owned them. It is also unclear if the alleged breaches of contracts are based on defendants' violations of copyrights or of other contractual obligations.

Thus, based on these deficiencies, plaintiffs have failed to state facts sufficient to constitute a claim. On this ground I agree with the affirmance of the judgment on the pleadings as to the purported contract and contract-related claims.

I do not believe that the "fact-specific analysis" applied by the majority should be employed to determine whether or not there is preemption. Many court decisions do not support the majority's formulation. (See, e.g., *Lipscher v. LRP Publications, Inc.* (11th Cir. 2001) 266 F.3d 1305, 1318-1319 (*Lipscher*); *Expediters Intern. v. Direct Line Cargo Management* (D.N.J. 1998) 995 F.Supp. 468, 483 (*Expediters*); *Architectronics, Inc. v. Control Systems, Inc.* (S.D.N.Y. 1996) 935 F.Supp. 425, 438-441 (*Architectronics*); *ProCD, Inc. v. Zeidenberg* (7th Cir. 1996) 86 F.3d 1447, 1453-1455 (*ProCD*); *Taquino v. Teledyne Monarch Rubber* (5th Cir. 1990) 893 F.2d 1488, 1501 (*Taquino*); see also *Video Pipeline v. Buena Vista Home Entertainment* (D.N.J. 2002) 210 F.Supp.2d 552, 565-566 (*Video Pipeline*) [citing with approval some of the above cases but finding an additional obligation as the "extra element"].)

Moreover, the legislative history of the federal copyright law, a history that is "puzzling and unreliable," does not support the "fact-specific analysis." (*Architectronics, supra,* 935 F.Supp. at p. 440; see also *ibid.,* quoting

Note, *Baltimore Orioles, Inc. v. Major League Baseball Players Association: The Right of Publicity in Game Performances and Federal Copyright Preemption* (1989) 36 UCLA L.Rev. 861, 879 [" 'Section 301(b)'s legislative history is a source of controversy and ambiguity, rather than a helpful guide to determining which rights Congress intended as not equivalent' "]; *National Car Rental v. Computer Associates* (8th Cir. 1993) 991 F.2d 426, 433-434 (*National Car Rental*) ["we believe in this case the facts surrounding the deletion of § 301(b)(3) suggest Congress did not intend to reverse the presumption of non-preemption for the examples initially included in § 301(b)(3)"]; *Mayer v. Josiah Wedgwood & Sons, Ltd.* (S.D.N.Y. 1985) 601 F.Supp. 1523, 1533; *Factors, etc., Inc. v. Pro Arts, Inc.* (S.D.N.Y. 1980) 496 F.Supp. 1090, 1096-1097, revd. on other grounds (2d. Cir. 1981) 652 F.2d 278.) Additionally, the "fact-specific analysis" is not easily workable, for it entails an evaluation in each case of the nature of the claims. Also, the "fact-specific analysis" broadens the application of preemption, a doctrine that deprives a party of state contract remedies and infringes on state sovereignty without any discernible benefit.

A widely used authority, Nimmer on Copyright, states that "[A] breach of contract action (whether such contract involves a mere idea or a fully developed literary work) is not predicated upon a right that is 'equivalent to any of the exclusive rights within the general scope of copyright . . .' This for the reason that a contract right may not be claimed unless there exists an element in addition to the mere acts of reproduction, performance, distribution or display. That additional element is a promise (express or implied) upon the part of the defendant." (4 Nimmer on Copyright (2002) The Law of Ideas, § 16.04[C], p. 16-25, fns. omitted (Nimmer).)

Professor Paul Goldstein, in his highly regarded work on copyright, presents an even broader concept of the contract exemption from federal copyright preemption. He states, "Contract law is a good example of a state law that will be immune from preemption under the extra element test. Contract law may be employed to prohibit the unauthorized reproduction, distribution, performance or display of a work. But, in addition to these acts, contract law requires the plaintiff to prove the existence of a bargained-for exchange—something it need not prove in a cause of action for copyright infringement." (3 Goldstein, Copyright (2002 supp.) § 15.2.1, p. 15:12.)

A number of courts have stated that contract claims are qualitatively distinct from copyright infringement and therefore are not preempted. (See, e.g., *Video Pipeline, supra,* 210 F.Supp.2d at pp. 566-567; *Lipscher, supra,* 266 F.3d at pp. 1318-1319; *Expediters, supra,* 995 F.Supp. at p. 483; *Architectronics, supra,* 935 F.Supp. at pp. 438-441; *ProCD, supra,* 86 F.3d at

pp. 1453-1455; *Taquino, supra,* 893 F.2d at p. 1501; cf. *Ronald Litoff, Ltd. v. American Exp. Co.* (S.D.N.Y. 1985) 621 F.Supp. 981, 985-986; *Rokos v. Peck* (1986) 182 Cal.App.3d 604, 617-618 [227 Cal.Rptr. 480].)[1] Admittedly, not all of these authorities are clear, and the theories differ. (Compare *ProCD,* 86 F.3d at p. 1454 [citing *Taquino, National Car Rental* and *Acorn Structures, Inc. v. Swantz* (4th Cir. 1988) 846 F.2d 923, 926 for the proposition that rights created by contract are not equivalent to copyright protection], with 1 Nimmer, *supra,* § 1.01[B][1][a] at p. 1-20 [asserting that these cases are fact-specific].) Nimmer focuses on the promise in the contract not to use the rights transferred as the additional element necessary to distinguish the contract claim from a copyright claim, while Professor Goldstein points to the bargained-for exchange as that additional element. Judge Easterbrook in *ProCD, supra,* 86 F.3d at page 1454, bases his conclusion that rights created by contract are not equivalent to the rights covered by copyright and therefore are not preempted because copyright rights are created by law, while a contract is created by and between the parties. He states that a "copyright is a right against the world. Contracts, by contrast, generally affect only their parties; strangers may do as they please, so contracts do not create 'exclusive rights.' " (*Ibid.*)

Because of these variations, Nimmer has pointed out "that the rule safeguarding contract causes of action against copyright pre-emption is less than categorical." He adds, however, that "the vast majority of contract claims will presumably survive scrutiny . . . ."[2] (1 Nimmer, *supra,* § 1.01 [B][1][a] at p. 1-22, fn. omitted.)

In my view, a claim that the reproduction or use of expressive material breaches a contract should not be preempted on the ground that the breach also violates the copyright law unless resort to the substantive federal copyright law is required in order to ascertain the rights of the parties under the contract. This approach resolves the dilemma presented by the court in *Selby v. New Line Cinema Corp.* (C.D.Cal. 2000) 96 F.Supp.2d 1053, 1060, in which the court observed that sometimes a promise is not an additional element, but is inextricable from the copyright—for instance, if a

---

[1] In *National Car Rental, supra,* 991 F.2d at page 434, footnote 6, the court said, "Because we decide that the specific contract right CA seeks to enforce is not equivalent to any of the copyright rights, we do not need to decide whether a breach of contract claim based on a wrongful exercise of one of the exclusive copyright rights is preempted."

[2] Nimmer goes on to state that ". . . nonetheless pre-emption should continue to strike down claims that, though denominated 'contract,' nonetheless complain directly about the reproduction of expressive materials." (1 Nimmer, *supra,* § 1.01 [B][1][a] at p. 1-22, fn. omitted.) This statement appears to be inconsistent with other pronouncements in the work. (See 4 Nimmer, *supra,* § 16.04[C], p. 16-25, fn. omitted.)

defendant promised not to infringe a copyright. In that instance, because the determination of the parties' rights would require deciding whether copyright infringement had occurred, the contract claim would be preempted.